STATE of Minnesota, Respondent,

v.

John Henry PAIGE, Appellant.

No. 46639.

Supreme Court of Minnesota.

July 8, 1977.

Charles W. Anderson and Dale A. Gruis, Monte M. Miller, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Richard G. Mark, Asst. Atty. Gen., Jane Prohaska, Spec. Asst. Atty. Gen., St. Paul, John L. Plattner, County Atty., Walker, for respondent.

Heard before KELLY, YETKA and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from a judgment of conviction entered by the Cass County District Court. The jury found the defendant guilty of possession of a handgun in a public place without a permit, in violation of Minn.St. 624.714, subd. 1. We reverse.

On November 16, 1975, state's witnesses Michael Lago, Patrick O'Neill, and Jeff Johnson left a nightclub-restaurant known as "R. C.'s" in Federal Dam, Minnesota, at approximately the same time. Lago headed for his car while O'Neill and Johnson began to walk home. Defendant Paige came out of R. C.'s, referred to Lago as a "longhair," and struck him twice with his hands. Lago urged O'Neill, who had returned to the parking lot with Johnson when they heard the altercation, to leave with him, but O'Neill and Johnson remained, arguing with Paige, while Lago drove off. Sometime during the argument, Paige went to his pickup truck and returned with a revolver. Lago saw the weapon also, since he had turned his car around and returned to R. C.'s parking lot. Paige grabbed O'Neill with his free hand, then struck him with the same hand. Johnson was also hit twice by Paige. When Paige saw Lago's car return, he attempted unsuccessfully to break the rear window with the gun, then succeeded in breaking a driver's side window, and fired a shot as Lago again drove away. Paige then waved the gun at O'Neill with the hammer cocked, and O'Neill and Johnson departed the scene in haste and summoned the police.

Officer Robert Karbowski, Deputy Sheriff for Cass County, arrived in Federal Dam about 2:30 a. m. and spoke to Lago, O'Neill, and Johnson about the incident. Karbowski was given Paige's address by Johnson, and proceeded to Paige's cabin. When he knocked on the door of the cabin all of the interior lights went out. About 10 minutes later Paige emerged unarmed from the cabin and was told to stand where he was by Karbowski, who frisked him, handcuffed him, and questioned him about the incident at R. C.'s. He asked Paige if he had had a gun with him at R. C.'s, and Paige answered, "Yeah." Karbowski at no time gave Paige a *Miranda* warning. The officer testified as follows:

"Well, I asked him if he did, in fact, have a gun, and he said, 'Yes.' And I said, 'Would you tell me where it is?' And he said, 'It's in my pickup.' The pickup was parked right there in the front of the cabin. And so I asked him if he would mind if I would get it. And he said, 'No,' and he reached in his pocket

and he gave me the keys. I unlocked the pickup. Asked him if he would mind if I looked in there. He said, 'No.' So I looked. There was a jacket or something on the seat and underneath this I found an empty holster, along with the rifle that was in a gun case. So in looking a little further, I looked up on the dash and found that revolver with six shells in it, three fired and three unfired."

Karbowski seized the two weapons, released Paige from the handcuffs, and then went home.

Paige was charged with simple assault against Michael Lago on November 17, 1975, and pled guilty to this offense on November 24. He was charged with carrying a pistol in a public place, in violation of Minn.St. 624.714, subd. 1, on November 24, 1975. Only this latter charge is at issue herein.

The trial court ruled at the omnibus hearing that Paige's pistol could not be introduced into evidence at the trial:

"And I might state for the benefit of the Sheriff's Office, that it is my opinion that the Wong Sun doctrine applies, and that because the seizure was a result of statements given without any *Miranda* warning, it's the fruits of the poison tree, and this simply means that the pistol, no other evidence, can be introduced at the time of the trial."

The court restated this ruling at the trial, with defendant's trial counsel present:

"However, for the record, I will say that in the omnibus hearing—so that we can get the ground rules straight, I was satisfied that none of the statements, exculpatory or inculpatory, made by the defendant up at his temporary abode in Bena, nor the seizure, the fact of the seizure, nor the gun, can be brought out in a trial because there was no *Miranda* warning. I am satisfied on that."

It is almost incredible that during the direct examination of state's witness Jeffrey Johnson, the county attorney introduced "State's Exhibit No. 1," a Smith & Wesson .357 magnum pistol.[1] Defense counsel did not object. Finally, when the county attorney offered the pistol into evidence, defense counsel's only objection was as to foundation, and he attempted to show that Johnson had no way of knowing if this was actually Paige's pistol. The county attorney then engaged in this colloquy with Johnson:

"Q You said you had observed that weapon or one identical to it on a previous occasion?

"A Yes, I had one identical to that in my hand once.

"Q And you said that was while working for the defendant?

"A Yes.

"Q And did you pick up that weapon at that time and take a look at it?

"A Yes.

"Q And was there anything different about that weapon which you sort of remembered?

"A Than now?

"Q Yes.

"A No. I just remembered it was kind of banged up is all.

"Q Like that weapon is?

"A Yes.

"Q That's what you are referring to?

"A Yes.

Without further objection by defense counsel, the same trial court that handled the omnibus hearing ruled as follows:

"Ladies and gentlemen, this exhibit is going to be received, but it's going to be received for a limited purpose. I don't believe the proof is sufficient to establish that this was the exact Smith & Wesson .357 magnum that this witness claims the defendant had that night. But it is so similar that I am going to permit it to go into evidence as illustra-

---

1. The pistol was first marked and displayed during the direct examination of Michael Lago, at which point no objection was proffered by the defense. After some questions on the incident itself, the county attorney asked Lago:

"And do you know what happened to the pistol which you just identified?" Answer: "No." The clear implication was that the marked pistol was Paige's, since the preceding testimony all regarded the incident with the "gun."

tive of the witnesses' testimony, for that purpose only."

The controlling issue here is whether the admission of the pistol during trial was a violation of the omnibus hearing order constituting prejudicial prosecutorial misconduct. First of all, it seems unquestionable that the prosecution intended the jury to believe that the exhibit was actually Paige's pistol. The trial court's admonishment regarding the "illustrative" purpose of the exhibit was not sufficient to alter the jury's perception of the pistol as the one allegedly held and fired by Paige. In justification, the state contends in its brief:

"The exhibit in this case was used simply to allow the jury to view directly a pistol similar to that which witnesses fully described through their oral testimony. While it is clear that any pistol adequately fitting the witnesses' description could have been used for that limited purpose for which the exhibit in the case was admitted, it appears that the actual gun seized by Officer Karbowski was the one admitted. However, no reference was made at any time during the trial as to where this particular gun came from. Nor was any reference made to Officer Karbowski's conversation with appellant or to his search of appellant's car. It is difficult to perceive how the use of the pistol in this limited manner violated the omnibus order or prejudiced appellant."

The county attorney made no reference to the pistol being introduced solely for a "limited purpose," and as shown above deliberately attempted to lead the jury to believe the gun was in fact the one seized from Paige. No other conclusion can be drawn from the record than that the admission of the pistol was a direct violation of the omnibus order. Obviously, the failure of defendant's counsel to bring an immediate objection and to move for a mistrial should not be allowed to prejudice defendant's case.

The only remaining question is whether defendant was prejudiced by the introduction of the pistol. The state gives the relevant principle that the introduction of illegally obtained evidence will be considered harmless if there is no reasonable possibility that the evidence complained of might have contributed to the conviction. *State ex rel. Kopetka v. Tahash,* 281 Minn. 52, 160 N.W.2d 399 (1968).

One of the necessary elements for a conviction under Minn.St. 624.714 is that the accused did carry, hold, or possess a pistol. It is difficult to imagine that the jury's finding on this element was not influenced by the display of a pistol identified by two witnesses to be of the exact same type as that seen in the defendant's hands on the night of the incident. The direct import of Johnson's testimony set out above is that it was the *same* weapon. Even with the trial court's "illustrative" ruling, the prosecution gained the same benefit as if it had introduced Paige's gun with custody testimony from Officer Karbowski, specifically forbidden by the trial court under *Miranda.*

Since each of the three state's witnesses, Lago, O'Neill, and Johnson, stated that they saw Paige with a pistol, and since Paige did not take the stand to deny it, their testimony was uncontroverted. The jury was entitled to weigh their credibility in deciding whether or not their testimony alone was sufficient to sustain a conviction. The introduction of the pistol, however, together with testimony from Johnson that this was Paige's pistol, surely made the jury almost certain of this element. The prejudicial effect was more than sufficient to satisfy the standard set out above—that of contributing to the conviction. For this reason, the conviction is reversed and the case remanded for a new trial at which the omnibus-hearing exclusionary order must be strictly enforced.

Even though we reverse for the reason stated above, we should discuss as a guide for the retrial whether defendant had the burden of showing that he had a permit as an affirmative defense. Defendant asserts that the burden should have been on the state to show the absence of a permit as an element of the offense under Minn.St. 624.714. As demonstrated by both defendant's and the state's briefs, other jurisdic-

tions have decided this "burden" issue as to permits both ways. While it is true that the state has the burden of proving beyond a reasonable doubt every element of the offense charged, see, e. g., *State v. Ewing,* 250 Minn. 436, 84 N.W.2d 904 (1957), there may be circumstances in which the defendant has the burden of proof. *State v. Bott,* Minn., 246 N.W.2d 48 (1976) (insanity defense). The state points out the relevant inquiry: Does the phrase "without a permit" in Minn.St. 624.714, subd. 1, add an element to the crime, or does it only create an exception to the general prohibition against possessing a pistol in certain places?

The better view is that "without a permit" is an exception. First, the defendant has the immediate opportunity to present his permit, if he has one, and thus avoid prosecution under the statute. There is nothing inherently unfair in requiring persons charged under the statute to present their permits. Second, the statute is intended to prevent the possession of firearms in places where they are most likely to cause harm in the wrong hands, i. e., in public places where their discharge may injure or kill intended or unintended victims. The only exception to this rule is for persons who have demonstrated a need or purpose for carrying firearms and have shown their responsibility to the police in obtaining a permit. The statute is therefore properly characterized as a "general prohibition": Anyone having a firearm in a public place may be prosecuted if he has no permit. "Without a permit" is not an element of the crime, but only indicates that some persons *cannot* commit the offense by reason of having a valid permit.

The Supreme Court of Michigan reached a similar result in *People v. Henderson,* 391 Mich. 612, 218 N.W.2d 2 (1974). Although that case involved a secondary interpretive statute in part relied upon by the court, the analysis is nevertheless persuasive. The comparable Michigan statute reads:

"Sec. 227. CARRYING CONCEALED WEAPONS—Any person who shall carry a dagger, dirk, stiletto or other dangerous weapon except hunting knives adapted and carried as such, concealed on or about his person, or whether concealed or otherwise in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him; and any person who shall carry a pistol concealed on or about his person, or, whether concealed or otherwise, in any vehicle operated or occupied by him, except in his dwelling house or place of business or on other land possessed by him, without a license to so carry said pistol as provided by law, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years, or by fine of not more than 2,500 dollars." (M.C.L.A. § 750.227; M.S.A. § 28.424.)

After acknowledging that it had previously held this statute to have two elements, the court proceeded as follows:

"On reconsideration however, we are persuaded that the crime defined by M.C.L.A. § 750.227; M.S.A. § 28.424 as it concerns this case, has but one element. We are satisfied that the operative words of the statute as they pertain to this defendant are:

" '* * * any person who shall carry a pistol * * * in any vehicle operated or occupied by him * * * shall be guilty of a felony.'

"The language in the statute 'without a license to so carry said pistol as provided by law' does not add an element to the crime, but simply acknowledges that a person may be authorized so to carry a pistol. This is of the essence of a license.

"A license is the permission by competent authority to do an act which, without such permission, would be illegal.

"Accordingly we hold that upon a showing that a defendant has carried a pistol in a vehicle operated or occupied by him, prima facie case of violation of the statute has been made out. Upon the establishment of such a prima facie case, the defendant has the burden of injecting the issue of license by offering some proof—not necessarily by official record—that he has been so licensed. The

people thereupon are obliged to establish the contrary beyond a reasonable doubt." 391 Mich. 616, 218 N.W.2d 4.

While the court was prompted to reconsider its prior rulings because of the interpretive statute,[2] it is clear that it found this reading of "without a license" both permissible and reasonable.

▮▮▮ The trial court was therefore justified in placing the burden upon the defendant to come forward with some evidence of a permit. The court, however, went even further by requiring the defendant to prove by a "fair preponderance" of the evidence that he had a permit. This goes beyond the holding of the Michigan court in *Henderson,* which required the defendant to establish only a prima facie case for a permit, with the state then having to prove the contrary beyond a reasonable doubt. The allocation of burdens made by the Michigan court would seem to comport more closely with the nature of the permit defense. If the defendant can show a permit, or can introduce a public record of a permit, this is sufficient to establish a prima facie case for the defense. At that point the overall presumption of innocence operates to shift the burden back onto the state to show the invalidity of the permit, or violation of the terms of the permit. Once the defendant has come forward initially with evidence of the permit, the state's difficulty in "proving a negative" is alleviated, making it reasonable for the state to disprove the defense.

▮▮▮ Further, we should make clear that in this factual setting there is no impediment of double jeopardy, collateral estoppel, or Minn.St. 609.035 [3] preventing the present prosecution. Paige's guilty plea on the charge of simple assault did not bar the present action for violation of Minn.St. 624.-

714, subd. 1. The incident at R. C.'s was not a "single behavioral incident" allowing only a single criminal prosecution to be brought. Paige struck Lago with his hands before retrieving his gun from the truck. This terminated the misdemeanor of simple assault against Lago, Minn.St. 609.22, and Lago left the area. Paige then took out his gun, and after Lago returned smashed his car window, waved the gun at O'Neill, and fired it. These actions constituted the offense under Minn.St. 624.714, subd. 1, possessing a firearm in a public place without a permit. The two crimes are entirely separate in character. They are not related in degree, and require entirely different facts to support a prosecution. The guilty plea to simple assault did not bar the later prosecution, on any of the grounds alleged by the appellant.

▮▮▮ A discussion of any further issues will be of no import on retrial. The question of the constitutionality of Minn.St. 624.714 will not be considered, since it was not a defense at trial, was first raised in the defendant's reply brief, and therefore is not before the court.

The conviction is hereby reversed and the case is remanded for a new trial on the basis of the violation of the omnibus order suppressing the pistol.

Reversed.

▮▮▮▮▮▮

---

**2.** M.C.L.A. § 776.20; M.S.A. § 28.1274(1) reads: "In any prosecution for the violation of any acts of the state relative to use, licensing and possession of pistols or firearms, the burden of establishing any exception, excuse, proviso or exemption contained in any such act shall be upon the defendant but this does not shift the burden of proof of the violation."

**3.** Minn.St. 609.035 reads: "Except as provided in section 609.585, if a person's conduct constitutes more than one offense under the laws of this state he may be punished for only one of such offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. All such offenses may be included in one prosecution which shall be stated in separate counts."