In the Matter of the
**WELFARE OF L.Z.**

In the Matter of the
**WELFARE OF C.R.P.**

In the Matter of the
**WELFARE OF S.L.P.**

**Nos. C7–85–1375, C7–85–1665 and C9–85–1666.**

Court of Appeals of Minnesota.

Feb. 4, 1986.
Review Granted April 11, 1986.

Atty., Ross Quaintance, Staff Atty., Minneapolis, for the state.

William R. Kennedy, Hennepin County Public Defender, Philip D. Bush, David H. Knutson, Asst. Public Defenders, Minneapolis, for appellants.

Heard, considered and decided by POPOVICH, C.J., and RANDALL and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellants C.R.P., age 12, and his sister S.L.P., age 10, were cited for habitual truancy. Following a hearing, the trial judge found the citation proven. The judge placed appellants under probationary supervision and ordered them to attend all classes during the next school year. The trial court also ordered psychological evaluations of all family members and a chemical dependency assessment for the minors' parents.

Appellant L.Z. was cited with one count of habitual truancy under Minn.Stat. § 120.10 (1984). A referee originally heard L.Z.'s case and found the citation proven. The court imposed a fine of $25. A high school student, L.Z. had turned 16 years old by the date of her hearing. On rehearing before a district court judge, the trial court affirmed the referee's ruling.

Appellants C.R.P. and S.L.P. claim that the evidence was insufficient to prove the violations beyond a reasonable doubt. We have also reviewed the sufficiency of evidence in the appeal of L.Z. Appellants in all three cases claim that admission of school attendance records to prove the citation violated their constitutional right of confrontation.

All three cases were consolidated on appeal. We reverse.

## FACTS

Each appellant in the three consolidated cases was found habitually truant. A habitual truant is

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Beverly J. Wolfe, Asst. County

a child under the age of 16 years absenting himself from attendance at school without lawful excuse for seven school days if the child is in elementary school or for one or more class periods on seven school days if the child is in middle school, junior high school, or high school. Minn.Stat. § 260.015, subd. 19 (1984).

### 1. C.R.P. and S.L.P.

C.R.P. and S.L.P., elementary school students, are brother and sister. Each was charged with one count of habitual truancy. C.R.P. was charged with missing 13 days of school and S.L.P. with 18 days. The evidence of truancy consisted of the school's attendance record, presented through school social workers. The witnesses were not the same persons who actually took notice of the child's absence on any given day. Rather, the witnesses were recipients of information sent to the school office by the children's teachers. Appellants did not testify at the hearing.

In C.R.P.'s case, the school attendance record is compiled by the school secretary based on the daily "attendance summary folder" kept by the teachers. The school social worker who presented the records at trial also had the attendance information recorded in her Social Work Log. The record showed C.R.P. missed 3 days of school before mid-January of 1985. Until that time, C.R.P. had been living with his father. After January 15, C.R.P. began living with his mother, whose home was in the attendance area for another school. He was not registered in the new school until February 6; thus, he was marked as absent without lawful excuse from his old school for all the days between January 15 and February 6.

Like her brother, S.L.P. did not allege that she was in school on the days cited. However, S.L.P. claimed her absences were excused. Although the trial court agreed not to consider 4 of the days, which were days that S.L.P. was suspended from the school bus, 14 days remained that the court found were not excused. On eight of those days, S.L.P. missed the bus to school. The social worker testified that, even though S.L.P. lives eight miles from school, "it is the parents' responsibility to get the child to school," and therefore missing the bus did not excuse the absences. On two other days, S.L.P. and her mother were moving. On the remaining four days of absence it was said that S.L.P. had overslept.

The trial court denied appellants' motions to dismiss, ruling that the burden was on them to prove, as an affirmative defense, that the absences were lawfully excused. The court also overruled appellants' objection to the admission of the school attendance records as a violation of their constitutional right to confront witnesses against them, holding that because truancy proceedings are not criminal in nature, the confrontation right was inapplicable.

### 2. L.Z.

L.Z. was charged with truancy for missing 20 days of school during the fall of 1984. The evidence of truancy consisted of the school's attendance record, presented through a school attendance clerk. The attendance clerk testified that she compiles attendance records from slips of paper received from the teachers. After she makes note of their contents on the attendance record, the clerk throws the teachers' slips away. The clerk also testified that "most of the time" she makes a note on the attendance record of whether the absence was excused or not. When asked what she meant by "most of the time," the witness stated:

Well I—well I think we do all the time, you know. As closely as I can tell, you know, I think I do it all the time I guess.

The clerk stated that she sometimes calls a child's parent to verify whether the absence was excused and that she had called L.Z.'s mother for this reason. On hearsay grounds, the trial court excluded the clerk's testimony regarding L.Z.'s mother's responses to these calls.

The attendance clerk testified that once she receives the attendance slips from the teacher, it is primarily her responsibility to follow up on a student's absence. She accepts notes from parents and calls parents

to verify excused absences. In cases involving numerous unexcused absences, she notifies the school principal. The principal then decides what further action should be taken.

L.Z. did not dispute that she missed the days of school listed on the citation and the school attendance record. However, she testified that her frequent absences were not "without lawful excuse" because they were due to illness. She stated that she was diagnosed as having mononucleosis after Thanksgiving. She had felt sick and missed days of school throughout the fall; the doctor told her the illness had been building up for some time preceding the diagnosis. L.Z. testified that she brought excuses from her mother for the days she was absent from school, but that the school officials often told her that "it wasn't all right for my mom to excuse me because I'd be gone too much and so I would just not be excused." L.Z.'s mother did not testify at the hearing.

Appellant objected to the evidence against her claiming the acceptance of attendance records as proof of truancy violated her right to confront witnesses. The trial court rejected this objection, holding that the right of confrontation did not apply in the case.

## ISSUES

1. Was it proven beyond a reasonable doubt that appellants absented themselves from school without lawful excuse for seven school days?

2. Was it error to admit attendance records offered as evidence of all elements of truancy?

1. The complexity of delinquency and truancy law is compounded by the statutory jurisdiction over parents, which can be exercised whenever the child's offense is adjudicated. Identical statements on this judicial power are made in Minn.Stat. § 260.185, subd. 1(b) (delinquency) and Minn.Stat. § 260.194, subd. 1(b) (truancy). The court exercised these powers in the P. children proceedings to require psychological examinations and chemical dependency assessments

## ANALYSIS

### 1. Sufficiency of evidence.

In juvenile delinquency proceedings, the court may admit only such evidence as would be admissible in a criminal trial. Minn.R.P.Juv.Ct. 27.04 (1985). To be proved at trial, allegations of delinquency must be proved beyond a reasonable doubt. Minn.R.P.Juv.Ct. 27.05. Proceedings on allegations of habitual truancy are categorized as petty matters, along with other so-called status offenses, but they are nevertheless subject to the rules governing delinquency cases. *See* Minn.R.P.Juv.Ct. 1.01.

■ The procedural treatment of truancy as an accusatory proceeding has been disputed in this case. However, the approach taken in the juvenile rules, which were adopted by the Minnesota Supreme Court in December 1982, is required by the truancy statutes. The statutory definition of truancy speaks of the child's fault; it refers not to absence, but to the child "absenting himself." Minn.Stat. § 260.015, subd. 19 (1984). Moreover, the authorized sanctions for truancy resemble those for delinquency, and in both kinds of cases the sanctions include many that can involve severe losses of the child's family and community contacts over long periods of time. *See* Minn.Stat. § 260.194 (1984) (permitted dispositions for habitual truants include probationary supervision, and transfers of legal custody to child placing agencies, county welfare boards, reputable individuals of good moral character, and group foster homes); Minn.Stat. § 260.181, subd. 4 (1984) (jurisdiction of the court may continue until the individual becomes 19 years of age). *Cf.* Minn.Stat. § 260.185 (1984) (dispositions where delinquency is adjudicated).[1] Truants and other children are

of both parents. (Neither appellants nor their parents have disputed whether the statutory powers on parental conduct imply authority to compel intensive examinations. *Cf.* Minn.Stat. §§ 260.151 and 260.194, subd. 1(g), where certain examinations of children are expressly authorized.) The authority to deal with parents may imply, both in delinquency matters and truancy matters, that fault or need rests in part with parents and not with children, and exercise

subject to controls that include detention without notice, and extended detention in special cases. Minn.Stat. §§ 260.165, subd. 1(d), 260.172, and 260.173, subds. 1–3 (1984); *State ex rel. L.E.A. v. Hammergren*, 294 N.W.2d 705, 707–08 (Minn.1980).

Two primary facts must be proven beyond a reasonable doubt to demonstrate habitual truancy under section 260.015, subd. 19. First, the fault in "absenting himself" must be shown. The child is not the scapegoat for the fault of others that leads to his absence.

Second, the absences must be "without lawful excuse." The statutes do not establish no-fault delinquency in the event of school absences. We are not called upon here to precisely define language on excuses. The words may also deal with the faults of others. They require attention to statutory excuses under Minn.Stat. § 120.-10, subd. 3 (1984). Whatever the exact meaning of the words, the statute does not support respondent's argument that the reference to excuse simply incorporates the judgment of the child's school that the child had no lawful excuse. Statutory language does not show that the legislature intended to delegate to school officials the making of standards, whether high or low, or the power to adjudicate finally whether a child is at fault such that the child is subject to the juvenile court's jurisdiction.

■ The trial court held in the P. children case that truancy citations are proven once the school shows that appellants were enrolled in a school and did not attend. The court observed that any other holding would put on school officials a burden of proof that extended to the content of appellants' thoughts. The trial court concluded that the fault factors can be handled as a matter of an affirmative defense. Two precedents compel us to conclude that it was error to inject an affirmative defense into the habitual truancy statute. *See State v. Brechon*, 352 N.W.2d 745 (Minn.

1984); *State v. Paige*, 256 N.W.2d 298 (Minn.1977).

In *Paige*, the supreme court framed the question thus:

> Does the phrase [here, "without lawful excuse"] * * * add an element to the crime, or does it only create an exception to the general prohibition against [non-attendance at school]?

*Paige*, 256 N.W.2d at 303. In *Paige*, the court held that the phrase "without a permit" in a statute created an exception to the prohibition against possession of pistols in certain places. Construed as an exception, the defendant there had the burden of establishing a prima facie case that he had a permit, with the state then having to prove the contrary beyond a reasonable doubt. *See id.* at 303–04.

The same question was posed in *Brechon*, where a trespass statute included the phrase "without claim of right." *Brechon*, 352 N.W.2d at 748. The supreme court held that the test for determining elements and exceptions is

> whether the exception is so incorporated with the clause defining the offense that it becomes in fact a part of the description.

*Id.* at 749 (quoting *Williams v. United States*, 138 F.2d 81, 82 (D.C.Cir.1943)). The court went on to hold that "without claim of right" is integral to the definition of criminal trespass and required the state to prove the element beyond a reasonable doubt.

The court in *Brechon* distinguished *Paige*, concluding that

> [i]n order to place the burden of proving the "exception" on the defendant, a court must decide that the act in itself, without the exception, is "ordinarily dangerous to society or involves moral turpitude" and that requiring the state to prove the acts

of the power in some cases could diminish chances for the child's loss of freedoms. However, the dispositional powers of the court are concurrent, not mutually exclusive, so that pow-

ers to deal with parents constitutes court authority in addition to powers directly affecting the child.

would place an impossible burden on the prosecution.

*Id.*

The trial court in the P. children matter premised its affirmative defense decision on the difficulty of the petitioner's burden of proof. If we endorse this concern, it still cannot be said that a child's absence from school stands by itself as a public offense. This is true because of implications of the phrase "without lawful excuse," but even more so because of the requirement to show the act of the child in "absenting himself."

Moreover, we do not agree that the petitioner's burden is insurmountable. Proof of facts can be facilitated by well planned systems of investigation and record keeping. In appropriate cases unprivileged testimony of a parent or guardian may establish wrongful truancy. *See* Minn.Stat. § 595.02(9) (1984) (only the juvenile's communications to a parent are privileged). Most importantly, in many cases of nonattendance, including situations where the child's parents are unavailable or uncooperative, there are indications of a need for dependency or neglect proceedings rather than a continuation of the proceedings against the child. *See* Minn.Stat. § 120.12 (1984). Indeed, a neglect and dependency proceeding was pending here for the welfare of appellants C.R.P. and S.L.P. Their mother attended hearings in this matter, but did not testify because she might have defeated her position in the child protection case.

Minnesota's truancy laws place a difficult burden on petitioners in some juvenile cases. On the other hand, the alternative burden of proof, one resting with the child, is equally difficult and, within the scheme of our constitution, unacceptable. Moreover, we cannot force children to choose between proof of a defense and the inclination to protect their parents from criticism.

In the L.Z. matter, the trial court found major public policy implications in a reading of the habitual truancy law that takes away the power to adjudicate on the basis of a school's attendance records. The court observed that the public interest in efficient disposition of truancy cases clearly outweighed the utility of cross-examining staff who would have to rely on the same records to refresh their memories about absences.

We cannot overlook the statute to permit schools to make the legal determination of whether children absented themselves without excuse, particularly when that determination must be proven beyond a reasonable doubt. This becomes even more clear when we consider that there is no developed state policy on what constitutes a lawful excuse for juvenile case purposes. Different standards may be employed in different cases. Judicial scrutiny is an important safeguard against discriminatory imposition of public sanctions.

Other public policy concerns are also involved. The risk of unjust steps in truancy cases is enlarged when the intervention is not premised on a credible recognition of the facts. It is a mistake to pursue an accusation of juvenile misconduct based upon adoption of a school judgment that may or may not reflect the facts about the child's fault or excuses.

█ The evidence against appellants does not establish beyond a reasonable doubt that they absented themselves from school without lawful excuse. In C.R.P.'s case, the majority of his absences occurred after he moved from his father's home to live with his mother. The state offered no explanation of why C.R.P.'s mother failed to enroll him in school as soon as he moved in with her. In S.L.P.'s case, the distance between her home and school prevented her from getting to school if she missed the school bus. The school social worker was correct in testifying that it is a parent's responsibility to get their child to school; again, the petitioner offered no explanation for the failure of S.L.P.'s mother to fulfill this responsibility. In L.Z.'s case attendance records, explained by the attendance clerk, were accepted as compelling proof to overcome testimony that the child had lawful excuses for absences.

### 2. Admissible evidence.

Petitioner in each of the three consolidated cases offered attendance records as the sole evidence of habitual truancy. It was not suggested that the records are formatted and kept to show mere nonattendance, independent of judgments about the causes or excuses for absences, nor were the records offered for the limited purpose of showing mere nonattendance. The records do not show the content of judgments, if any, on questions of cause or excuse for absences. In other words, the records were kept and introduced as proof of the elements of statutory truancy, nothing less; insofar as the record keepers actually examined matters of fault or excuse the records show only their conclusions. The trial court decided the documents were admissible business records.

Appellants contended that the decision to admit the records had constitutional importance, because it was a violation of their right to confront and cross-examine witnesses. The trial court decided that the right of confrontation did not apply in proceedings on petitions alleging habitual truancy.

We must first decide whether the right of confrontation exists for appellants in these cases. If it does, the law of evidence on business and official records for the cases is shaped almost completely by the law on the confrontation right.

■ We conclude that the right of confrontation is a settled part of the procedure for the disposition of truancy cases under Minnesota statutes. Juvenile court proceedings are not criminal proceedings, and no child may be deemed to have been convicted of a crime because of an adjudication of the child's status in a juvenile court. *In re Hitzemann*, 281 Minn. 275, 279, 161 N.W.2d 542, 545 (1968); Minn.Stat. § 260.-211 (1984). As we have noted, however, according to juvenile rules, the only admissible evidence is that which would be admissible in a criminal trial. Minn.R.P. Juv.Ct. 27.04. One of the enunciated purposes of the 1982 rules is to assure that the constitutional rights of children are protected. Minn.R.P.Juv.Ct. 1.02. The supreme court in the rules has declared the fundamental rights of accused children, specifically including "the right to confront witnesses against oneself." *See* Minn.R.P. Juv.Ct. 21.03, subd. 1(a).

The habitual truancy statute addresses the fault of the child and can result in severe consequences to that child. Prior appellate decisions, consistent with Minnesota's procedural rules, reflect that where the fault of the child is at issue and penalties may attach, criminal protections apply. *See In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (juveniles have a right to notice of charges, counsel, confrontation and cross-examination, and the privilege against self-incrimination); *Raino v. State*, 255 N.W.2d 398, 399–400 (Minn.1977) (notice of charges); *In re Welfare of T.D.F.*, 258 N.W.2d 774, 775 (1977) (right to effective counsel). The *Gault* case in particular emphasized the need for constitutional guarantees where the loss of liberty is at stake. *See Gault*, 387 U.S. at 34, 36–37, 49, 56–57, 87 S.Ct. at 1447, 1448–49, 1455, 1458–59. The inclusion of the right of confrontation under the rationale of *Gault* is indicated in the more recent case of *McKeiver v. Pennsylvania*, 403 U.S. 528, 532, 533, 543, 91 S.Ct. 1976, 1980, 1985, 29 L.Ed.2d 647 (1971).

*Gault's* treatment of the right of confrontation was limited to juvenile proceedings that may lead to "commitment to a state institution." *See Gault*, 387 U.S. at 56, 87 S.Ct. at 1458–59. Appellants were only given probation and L.Z. was only fined. That the penalty imposed does not presently include any form of detention does not mean that appellants' constitutional rights were subject to suspension during the hearing itself. What is important is not the fact that the charge was minor, but that commitment could occur. In determining that another constitutional right, that of the privilege against self-incrimination, applies to juvenile proceedings, the United States Supreme Court in *Gault* held that

It would be entirely unrealistic to carve out of the Fifth Amendment all

statements by juveniles on the ground that these cannot lead to "criminal" involvement. In the first place, juvenile proceedings to determine "delinquency," which *may* lead to commitment to a state institution, must be regarded as "criminal" for purposes of the privilege against self-incrimination. To hold otherwise would be to disregard substance because of the feeble enticement of the "civil" label-of-convenience which has been attached to juvenile proceedings. * * * [C]ommitment is a deprivation of liberty. It is incarceration against one's will, whether it is called "criminal" or "civil."

*Id.* at 49–50, 87 S.Ct. at 1455–56 (emphasis added).

Likewise, there is not a legally significant distinction between commitment to a training school and commitment to the myriad of corrections and treatment facilities where children can be placed under Minn.Stat. § 260.194, subd. 1(c) (1984).[2] The child may be isolated from home and community in these institutions, the child's life is controlled by residential caretakers while in placement, and complete isolation and confinement can occur in many of the facilities. Additionally, public secure detention facilities may be employed to confine children who do not conform to the demands of residential caretakers. An institution of confinement is still an institution of confinement, "however euphemistic the title." *Gault*, 387 U.S. at 27, 87 S.Ct. at 1443.

Finally, we find support for appellant's claim of the right of confrontation by examining how it is applied in adult cases. Even in petty misdemeanor cases, such as traffic offenses, an adult defendant has the right to confront the police officers or other witnesses who observed the relevant facts. It is not enough to allow the police records clerk to testify that their office received a copy of the ticket accusing the defendant of the offense. Regardless of whether the adult defendant is facing a

penalty of incarceration, the right to confront one's accusers is respected.

Having concluded that the right of confrontation is part of the procedure of the cases, we must examine how it affects the trial court's decisions on admission of records. Respondent asserts that confrontation rights of the children are not violated by every form of hearsay record or statement. Necessary and reliable hearsay can substitute for confrontation and cross-examination of witnesses. *Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980).

Official records are not admissible as evidence in a criminal case where they reflect so-called "evaluative" reports, including police observations or the result of an official investigation. Minn.R.Evid. 803(8). Admissibility of these reports as evidence in a criminal case involves "the almost certain collision with confrontation rights." Advisory Committee's Note, Fed.R. of Evid. 803, 50 M.S.A. 595. Even in civil cases records of judgmental conclusions are inadmissible. *Barnes v. Northwest Airlines, Inc.*, 233 Minn. 410, 433, 47 N.W.2d 180, 193 (1951). Official records of non-discretionary data may be received in a criminal case, but this is not true when the basis for the data is at issue. *State v. Brown*, 303 Minn. 114, 117, 226 N.W.2d 747, 749 (1975). Business records, even more generally than official records, are not admissible to prove an essential element of a crime. *State v. Matousek*, 287 Minn. 344, 350, 178 N.W.2d 604, 608 (1970).

Here we are faced with a limited issue. The trial court concluded that school attendance records were admissible as proof of habitual truancy, that children absented themselves without lawful excuse. Habitual truancy as defined by our statute raises questions about the proffering of reasons or excuses and later judgments about the worthiness of those reasons or excuses.

---

**2.** The trial court in the L.Z. case noted that of the 1332 truancy citations in Hennepin County during the 1983–84 school year, 49 resulted in placement. Some placements were to foster homes but some were also to a structured residential treatment center and to an involuntary workcamp.

The records show information that is evaluative in nature, and they cannot substitute for the child's right of confrontation.

Respondent asserts that there is no dispute here over the occurrence of absences, so that it was not necessary to call other witnesses to testify against appellants. This contention is incorrect. The submitted records did not reflect mere non-attendance, independent of judgments about reasons or excuses for absences. Moreover, the records were not offered for limited proof of non-attendance. In addition, the children did not admit personal fault or the absence of excuse; if they had, records on attendance would be sufficient to show habitual truancy. Our decision does not reach issues that may arise in other cases where attendance records are offered, but only the issue created by the records here, offered and received as they were, and with regard to the particular posture of the children in these cases.

We concluded first in these cases that Minnesota law does not permit the requirement that appellants prove that their absences were excused. In addition, we conclude that this approach led here to erroneous admission of hearsay records and that the decision to admit this evidence deprived appellants of their right of confrontation and denied them due process.

## DECISION

Respondent failed to show beyond a reasonable doubt that appellants absented themselves without lawful excuse. The admission of the school attendance records violated appellants' constitutional right of confrontation.

Reversed.