STATE of Minnesota, Respondent,

v.

Quenton Tyrone WILLIAMS,
Appellant.

No. A08–2129.

Supreme Court of Minnesota.

March 9, 2011.

Robin M. Wolpert, Erin Sindberg Porter, Special Assistant State Public Defenders, Greene Espel, P.L.L.P., Minneapolis, Minnesota, for appellant.

Lori Swanson, Attorney General, St. Paul, Minnesota; and Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Faison T. Sessoms, Minneapolis, Minnesota, for amicus curiae Minnesota Association of Criminal Defense Lawyers.

Teresa Nelson, St. Paul, Minnesota, for amicus curiae American Civil Liberties Union of Minnesota.

## OPINION

ANDERSON, G. BARRY, Justice.

In this appeal, we consider whether a police officer had probable cause to arrest appellant Quenton Tyrone Williams after observing Williams possess a pistol in a public place during a lawful investigatory stop related to an armed robbery report. The officer arrested Williams for possession of a pistol in a public place after the robbery victim was unable to identify Williams. At the jail following arrest, Williams surrendered cocaine to the arresting officer. The State charged Williams with fifth-degree possession of a controlled substance and sought the statutory mandatory minimum sentence for a drug offense committed while in possession of a firearm. Before trial, Williams

moved to suppress the pistol and cocaine.[1] The district court denied the motion and at trial, the pistol and cocaine were admitted into evidence without objection. The jury found Williams guilty of possessing cocaine while in possession of a firearm. Pursuant to Minn.Stat. § 609.11 (2010), the court imposed a 36–month mandatory minimum sentence. The court of appeals affirmed the conviction. Because we conclude there was probable cause to arrest Williams for possessing a pistol in a public place in violation of Minn.Stat. § 624.714, subd. 1a (2010), we also affirm Williams's conviction.

On March 26, 2008, Minneapolis Police Officer Jason Andersen and other officers responded to a radio report of a robbery involving a gun. One of the robbery suspects was described as a tall black man wearing a black hooded sweatshirt who was last seen running west from 22nd Street and Emerson Avenue North in Minneapolis. Andersen was in a car about a block away when he and other officers heard the call and drove to the scene. As Andersen turned onto 22nd Street, Andersen saw a man who matched the description running west on 22nd. Andersen got out of the car, pursued the man down an alley, and, as he closed in, called out: "Police. Stop." After Andersen gave the command to stop, the running man turned to his right. At that point, Andersen saw the butt of a handgun sticking out of the right front pocket of running man's sweatshirt and ordered him to the ground.

The running man, later identified as Williams, complied immediately. Andersen handcuffed Williams and asked if he had a gun. Williams answered, "Yeah, it's in my pocket right here." Andersen then took a pistol from the pocket and identified it as a loaded .38–caliber revolver. When the robbery victim was brought to Williams, the victim told police he was unable to identify Williams as one of the suspects because the victim "had been assaulted pretty good." After the victim was unable to identify Williams as a suspect, Andersen arrested Williams because Williams possessed the pistol.

At the jail vehicle entrance, Williams told Andersen that he did not want to be booked into the jail because he was carrying cocaine. Andersen retrieved the cocaine from Williams, who then was booked. During an interview at the jail the next day, March 27, 2008, Williams told Andersen that the cocaine was worth $60 and said he carried the pistol for protection. Nothing in the record indicates whether Williams had a permit for the pistol, whether the police asked Williams to produce a permit for the pistol, or whether the police determined that Williams did not have a permit for the pistol. On March 28, the State charged Williams with fifth-degree controlled substance crime, possession, in violation of Minn.Stat. § 152.025, subd. 2(1) (2008). In the complaint, the State alleged Williams committed the controlled-substance offense while in possession of a firearm. As a result, Williams was subjected to a mandatory minimum sentence of 36 months under Minn.Stat. § 609.11, subd. 5.

At a contested *Rasmussen* hearing, Williams's counsel moved to suppress the pistol, contending that Andersen found the pistol "following an illegal arrest in that at the time the defendant was detained it had

---

1. Williams also moved to suppress a statement given by Williams at the jail because of a *Miranda* violation. The district court found no violation of Williams's *Miranda* rights and denied the motion. That decision is not at issue in this appeal.

been determined that he was not a suspect in a robbery." [2] Andersen's testimony at the *Rasmussen* hearing included the following statements. After Andersen gave the command to stop, Andersen testified that Williams "turned to his right and saw who I was.... At that point I saw the butt of a handgun sticking out of his right front jacket pocket and obviously I had my gun out and ordered him to the ground." When Andersen asked if Williams had a gun, Williams answered, "Yeah, it's in my pocket right here." Andersen then took the pistol from Williams's pocket and identified it as a loaded .38–caliber revolver. Because the victim did not identify Williams as a suspect, Andersen testified, Williams "wasn't charged with the robbery. He was charged with the handgun." Williams decided to represent himself for part of the *Rasmussen* hearing and asked Andersen, "What led you to probable cause of arresting me?" Andersen replied: "You had a gun on you."

Construing Williams's suppression motion as a request to suppress all "the fruits of the arrest," the district court denied the motion, finding that the police had probable cause to stop Williams when they saw him running near the scene of the robbery:

I do find that the officers were properly investigating a robbery charge, that they were approximately one block away from the site of the robbery when they encountered an individual matching [Williams's] description, who also matched the description of the individual who had been reported to be involved in the robbery. They made efforts to stop

that individual. They had probable cause to do so based upon the 911 call and on the descriptions that they were given....

The court noted that Andersen observed the pistol in Williams's sweatshirt pocket during the course of the stop, ordered Williams to the ground, and handcuffed him. Williams then "admitted that he had the gun and [Andersen] recovered a .38 caliber revolver." The district court further ruled the State could not present evidence suggesting a link between Williams and the robbery because the victim was unable to identify Williams as a robbery suspect. The court's ruling on the robbery evidence prompted a pro se challenge from Williams to probable cause for the arrest of Williams:

THE COURT:.... The charge in front of you is a drug and gun charge, not a robbery, and I'm not going to let the State try to make it look like you committed a robbery when they don't have the evidence that you did.

[WILLIAMS]: The main point is that I should have never been subject to arrest. I have evidence that I was on a bus, got off the bus. I wasn't off the bus for five minutes and then I'm all of a sudden arrested.[3] I've never drawn probable cause toward me.

THE COURT: What I just ruled is that the officer had probable cause when he testified that he saw the gun.

(Footnote added.)

At trial, the gun and cocaine were received into evidence without objection.

---

2. The sequence of police action against Williams described by his counsel in the motion to suppress is not consistent with the testimony that followed at the *Rasmussen* hearing. Instead, the *Rasmussen* testimony indicated, and the court found, that Andersen

saw, retrieved, and identified the pistol during the course of a lawful stop.

3. Nothing Williams said during the *Rasmussen* hearing was under oath.

The jury found Williams guilty of possessing cocaine while possessing a firearm, and the court convicted Williams and imposed the mandatory 36–month sentence.

On appeal, Williams urged the court of appeals to interpret Minn.Stat. § 624.714, subd. 1a, in a manner that would require a peace officer to determine proactively that a person does not have a permit before arresting that person for possession of a firearm in a public place. Citing *State v. Timberlake*, 744 N.W.2d 390 (Minn.2008), the State argued that a peace officer is not required to determine proactively that a person does not have a permit because the failure to obtain a permit to carry is not an element of the gross misdemeanor defined by Minn.Stat. § 624.714, subd. 1a.

A divided panel of the court of appeals affirmed. *State v. Williams*, No. A08–2129, 2010 WL 153976, at *6 (Minn.App. Jan. 19, 2010). The majority of the court of appeals panel did not reach the issue of whether a peace officer is required to determine that a person does not have a permit before arresting that person for possession of a firearm in a public place. *Id.* The majority explained that even if Andersen was required to determine that Williams did not have a permit before arresting him for possession of a firearm in a public place, Andersen's observations supported a reasonable inference that Williams did not possess a permit to carry the pistol. *Id.* at *5. The dissent argued that probable cause to believe a person violated Minn.Stat. § 624.714, subd. 1a, cannot exist unless a police officer makes a lawful demand for the permit. *Id.* at *6 (Stauber, J., dissenting). In support of that proposition, the dissent cited the statutory language of Minn.Stat. § 624.714, subd. 1b (2010), that makes it a petty misdemeanor for the holder of a permit to fail to produce the permit when carrying a pistol upon lawful demand of a peace officer. *Williams*, 2010 WL 153976, at *7 (Stauber, J., dissenting). We granted Williams's petition for review.

I.

Both the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution protect citizens against "unreasonable searches and seizures." A warrantless arrest is reasonable if supported by probable cause. *See, e.g., Ker v. California*, 374 U.S. 23, 34–35, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (plurality opinion); *State v. Ortega*, 770 N.W.2d 145, 150 (Minn.2009); *In re Welfare of G.M.*, 560 N.W.2d 687, 695 (Minn.1997). Probable cause to arrest exists "when a person of ordinary care and prudence, viewing the totality of circumstances objectively, would entertain an honest and strong suspicion that a *specific* individual has committed a crime." *Ortega*, 770 N.W.2d at 150; *see also In re Welfare of G.M.*, 560 N.W.2d at 695. Probable cause requires something more than mere suspicion but less than the evidence necessary for conviction. *State v. Horner*, 617 N.W.2d 789, 796 (Minn.2000); *State v. Camp*, 590 N.W.2d 115, 119 n. 9 (Minn. 1999) (citing *State v. Fish*, 280 Minn. 163, 169, 159 N.W.2d 786, 790 (1968)). The inquiry is objective, and the existence of probable cause depends on all of the facts of each individual case. *See State v. Riley*, 568 N.W.2d 518, 523 (Minn.1997).

When facts are not in dispute, as here, we review a pretrial order on a motion to suppress de novo and "determine whether the police articulated an adequate basis for the search or seizure at issue." *State v. Flowers*, 734 N.W.2d 239, 247–48 (Minn.2007). The legal question in this

case is whether at the time of Williams's arrest a person of ordinary care and prudence, viewing the totality of the circumstances and all the facts of this case objectively, would have entertained an honest and strong suspicion that Williams violated Minn.Stat. § 624.714, subd. 1a. *See Ortega,* 770 N.W.2d at 150; *In re Welfare of G.M.,* 560 N.W.2d at 695.

Minnesota Statutes § 624.714, subd. 1a, provides:

> A person ... who carries, holds, or possesses a pistol ... on or about the person's clothes or the person ... in a public place ... without first having obtained a permit to carry the pistol is guilty of a gross misdemeanor. A person who is convicted a second or subsequent time is guilty of a felony.

In *State v. Paige,* 256 N.W.2d 298, 303 (Minn.1977), we held that the "without first having obtained a permit" language did not add an element to the crime of possession of a pistol in a public place. Rather, the permit language created an exception to criminal liability:

> The statute is therefore properly characterized as a "general prohibition": *Anyone having a firearm in a public place may be prosecuted if he has no permit.* "Without a permit" is not an element of the crime, but only indicates that some persons *cannot* commit the offense by reason of having a valid permit.

*Id.* (first emphasis added). Under our construction of the statute, the elements of the offense are satisfied when the State proves at trial that a person possessed a pistol in a public place. *See id.* at 304 ("Paige then took out his gun, and after Lago returned smashed his car window, waved the gun at O'Neill, and fired it. These actions constituted the offense un-

der [Minn.Stat.] § 624.714, subd. 1...."). Holding a permit, under the statute, operates as an affirmative defense: Once a defendant produces a permit or introduces a public record of a permit, then "the overall presumption of innocence operates to shift the burden back onto the state to show the invalidity of the permit, or violation of the terms of the permit." *Id.*

In *Timberlake,* we affirmed the construction reached in *Paige* of the elements of the offense of possession of pistol in a public place. 744 N.W.2d at 397. We also concluded the Minnesota Citizens' Personal Protection Act of 2003—which recodified the language describing the offense from subdivision 1 to subdivision 1a—did not overrule *Paige* nor substantively alter the offense. *Timberlake,* 744 N.W.2d at 395–96. In fact, we held in *Timberlake* that the Legislature reinforced our conclusion in *Paige* when it included the affirmative defense available to permit holders in the statute itself. *Id.* at 396 (citing Minn.Stat. § 624.714, subd. 1b(b) ("A citation issued for violating paragraph (a) must be dismissed if the person demonstrates, in court or in the office of the arresting officer, that the person was authorized to carry the pistol at the time of the alleged violation.")). Applying the elements of Minn.Stat. § 624.714, subd. 1a, we concluded in *Timberlake* that a citizen's tip to police that a suspect was carrying a pistol in a motor vehicle provided officers with reasonable, articulable suspicion that the driver was violating Minn.Stat. § 624.714, subd. 1a. *Id.* at 397. Because the reasonable, articulable standard was satisfied, the officers were justified to stop the vehicle and investigate. *Id.*

The elements of an offense do not change when a court analyzes whether there was a reasonable, articulable suspi-

cion that the offense was committed and when it analyzes whether there was probable cause to believe the offense was committed. Rather, the standards of reasonable, articulable suspicion and of probable cause relate to the court's objective assessment of the strength of an officer's suspicion or belief that a person's conduct satisfies the elements of an offense, accounting for such factors as the source, nature, and reliability of the information upon which the officer bases his or her suspicion or belief. *Compare Timberlake*, 744 N.W.2d at 392, 397 (holding that reliable informant's report that a gun was in a car provided a reasonable, articulable suspicion to stop that car), *with State v. Willis*, 320 N.W.2d 726, 728 (Minn.1982) ("Standing where he had a right to stand ... [the officer] saw, in open view, the clip of the gun protruding from under the seat. At this point, he had probable cause to believe that there was a gun under the seat."). The distinctions are necessarily fact-intensive and deal with the totality of the circumstances present in the individual case under analysis. *See, e.g., Flowers*, 734 N.W.2d at 248–49, 252 (holding a driver's furtive movements inside a vehicle when police officers were directly behind him created a reasonable suspicion of illegal conduct, but alone did not provide probable cause). There are few bright-line rules to apply when interpreting the Fourth Amendment of the U.S. Constitution or Article I, Section 10, of the Minnesota Constitution, and we do not draw a new one here.

In *Timberlake*, an informant told the police that he saw a person with a gun in his car leave a gas station. 744 N.W.2d at

392. We decided that the informant's tip provided reasonable, articulable suspicion that Minn.Stat. § 624.714, subd. 1a, was violated. *Id.* at 397. Therefore, in *Timberlake*, the investigatory stop of the vehicle was valid.

At the time of Williams's arrest, Andersen had substantially more information than the officers did in *Timberlake*. During a lawful investigatory stop related to an armed robbery report, Andersen personally saw Williams in a public place with the butt of a pistol sticking out of his sweatshirt pocket; heard Williams admit possessing a pistol; and corroborated Williams's admission by removing the pistol from Williams's pocket and confirming that it was a loaded .38–caliber revolver.[4] We conclude that a person of ordinary care and prudence, viewing the totality of the circumstances objectively, would entertain an honest and strong suspicion that Williams violated Minn.Stat. § 624.714, subd. 1a. Andersen's warrantless arrest of Williams was supported by probable cause and therefore lawful under the United States and Minnesota Constitutions. The district court properly denied the motions to suppress the pistol and other fruits of the arrest.

## II.

In his appeal, Williams also raises an argument based on the Second Amendment. Williams asserts that a decision from us finding probable cause to arrest for a violation of Minn.Stat. § 624.714, subd. 1a, without requiring the police to believe he did not have a permit would amount to a decision that gun possession is "presumptively illegal."[5] Such a premise,

---

4. Williams does not dispute that his initial stop was lawful, nor does he dispute the sequence of events as described at the *Rasmussen* hearing.

5. As additional support for his argument,

he argues, conflicts with the Second Amendment to the United States Constitution and with Minn.Stat. § 624.714, subd. 22 (2010). In Minn.Stat. § 624.714, subd. 22, the Legislature stated that it

> recognizes and declares that the second amendment of the United States Constitution guarantees the fundamental, individual right to keep and bear arms. The provisions of this section are declared to be necessary to accomplish compelling state interests in regulation of those rights. The terms of this section must be construed according to the compelling state interest test.

Williams does not argue that Minn.Stat. § 624.714, subd. 1a, is unconstitutional because it fails the compelling state interest test. Rather, he argues that the Second Amendment creates a presumption of legality that requires us to alter our construction of the elements of Minn.Stat. § 624.714, subd. 1a, when evaluating whether probable cause exists to support a warrantless arrest. The court of appeals did not consider Williams's Second Amendment argument because he never raised it at the district court. *Williams*, 2010 WL 153976, at *5. Williams contends that he could not have raised the issue at the

district court because nothing in the record indicated the crime for which he was arrested.

■ We ordinarily do not consider issues raised for the first time on appeal, even when those issues are constitutional questions of criminal procedure or are challenges to the constitutionality of a statute. *State v. Henderson*, 706 N.W.2d 758, 759 (Minn.2005); *State v. Schleicher*, 672 N.W.2d 550, 555 (Minn.2003). But we may choose to address constitutional and other issues that were not raised at the district court, when the interests of justice require their consideration and when doing so would not work an unfair surprise on a party. *Henderson*, 706 N.W.2d at 759. For example, in *Henderson*, the appellant claimed that a sentence imposed under the state's career-offender statute violated his Sixth Amendment right to a jury trial in light of *Blakely v. Washington*, 542 U.S. 296, 303–05, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *Henderson*, 706 N.W.2d. at 759. *Blakely* was decided after Henderson's case was submitted to the court of appeals and so could not have been applied by the sentencing court. *Henderson*, 706 N.W.2d. at 759. We exercised our discretion to address the issue,

Williams relies chiefly on *United States v. Harris*, No. CIV 07–21, 2007 WL 1425481 (D.Minn. May 11, 2007); *Commonwealth v. Couture*, 407 Mass. 178, 552 N.E.2d 538 (1990); and *United States v. Jones*, 606 F.3d 964 (8th Cir.2010), which dealt in part with Nebraska's Concealed Handgun Permit Act. We reject Williams's arguments based on *Couture* and *Jones*, without discussion, for the reason we rejected foreign decisions in *Timberlake:* "Cases from other jurisdictions are not particularly helpful because they depend on interpretation of a particular state's or territory's gun licensing statute. Here, we rely only on our own interpretation of Minnesota's statute." 744 N.W.2d at 394 n. 5.

In *Harris*, the United States District Court for the District of Minnesota evaluated wheth-

er an officer had probable cause to arrest a minor for violating Minn.Stat. § 624.713, subd. 1 (2008). 2007 WL 1425481, at *9. The court concluded that there was nothing in the record to indicate whether the minor fell within a statutory exception to the general prohibition of that statute. *Id.* While *Harris* at least dealt with a Minnesota statute, it is an unpublished decision of a court that carries no precedential weight. *Harris* was decided the year before our decision in *Timberlake*, does not discuss or cite *Paige*, and deals with a different statute than what is at issue here. *See id.* We therefore reject Williams's argument to the extent it is based on *Harris*.

reversed, and remanded for resentencing. *Id.* at 760, 763.

The interests of justice do not require us to address the issues Williams failed to raise at the district court. Despite his claims to the contrary, the record in this case indicates that the basis for and lawfulness of Williams's arrest for possessing a pistol in a public place were questioned as early as his March 31, 2008, first appearance. During his argument for bail, the public defender representing Williams argued to the court that Williams was arrested "after there was this inability of anyone to identify him with any criminal activity.... I understand the court's concern, but there's not a law against him having a gun." In addition, the State told the court at the March 31 hearing that the criminal case against Williams was scheduled in the court's block system "because of the firearm" and the mandatory minimum sentence sought under Minn.Stat. § 609.11. Thus, nothing prevented Williams from asserting, in the district court, a Second Amendment claim based on *District of Columbia v. Heller,* 554 U.S. 570, 595, 636, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) (holding that the Second Amendment guarantees to individuals the right to possess pistols in the home, particularly for self-defense), which was decided on June 26, 2008—more than one month before Williams's August 11, 2008, *Rasmussen* hearing. This is especially true given that the Minnesota Legislature expressed its intention, in Minn.Stat. § 624.714, subd. 22, to recognize the fundamental, individual right to bear arms and to declare that any challenge to the Minnesota Citizens' Personal Protection Act must be examined under the compelling state interest test, often described as "strict scrutiny" by the Supreme Court.[6] Unlike the application of *Blakely* to *Henderson,* the holding of *Heller* is not clearly applicable to the probable cause analysis of Williams's arrest. Consequently, we conclude that the interests of justice do not require us to address the Second Amendment claim Williams failed to raise at the district court.

### III.

In this decision, we decline to define the precise contours of when a warrantless arrest for violating Minn.Stat. § 624.714, subd. 1a, is supported by probable cause and when it is not. Rather, we limit our holding to the facts and totality of the circumstances of this case. We conclude that a person of ordinary care and prudence, viewing the totality of the circumstances objectively, would entertain an honest and strong suspicion that a suspect violated Minn.Stat. § 624.714, subd. 1a, when a police officer lawfully retrieved a pistol from the clothing of the suspect after the officer observed the pistol in the clothing of the suspect during a legal stop in a public place. Therefore, we hold that

---

**6.** In *Heller,* the Supreme Court acknowledged that nothing in its opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." 554 U.S. at 626–27, 128 S.Ct. 2783. *Heller* was incorporated against the states on June 28, 2010, when the Su-

preme Court announced its decision in *McDonald v. City of Chicago,* 561 U.S. ——, ——, 130 S.Ct. 3020, 3050, 177 L.Ed.2d 894 (2010). The *McDonald* decision came after briefing to us concluded in this case but before oral argument. In neither *Heller* nor *McDonald,* however, did the Supreme Court announce the level of scrutiny that courts should bring to bear when determining whether a state action violates a citizen's Second Amendment rights.

Andersen's warrantless arrest of Williams was supported by probable cause and was lawful under the United States and Minnesota Constitutions. The district court properly denied the motion to suppress the pistol and other fruits of the arrest.

Affirmed.

STRAS, J., took no part in the consideration or decision of this case.

### CONCURRENCE

PAGE, Justice (concurring).

While I concur in the result, I write separately to note that it is likely to come as a shock to all those people who have obtained a permit to carry, hold, or possess a pistol in a public place that by carrying, holding, or possessing the permitted pistol in a public place they subject themselves to arrest under Minn.Stat. § 624.714, subd. 1a (2010).