In the Matter of the Application of
Berton M. ATKINSON,
Petitioner, Appellant.

No. 50089.

Supreme Court of Minnesota.

April 4, 1980.

John Remington Graham, Minneapolis (James J. Featherstone, National Rifle Assn., Washington, D. C., of counsel), for appellant.

Gary Gandrud, City Atty., and Gordon C. Mohr, Asst. City Atty., Bloomington, for respondent.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol Gen., D. Douglas Blanke, Sp. Asst. Atty. Gen., St. Paul, amicus curiae.

Heard before PETERSON, TODD, and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

On June 1, 1978, plaintiff Berton Atkinson filed an application with the Chief of Police of the City of Bloomington for a permit to carry a pistol, pursuant to Minn. Stat. § 624.714 (1978). His application was denied for failure to demonstrate a "personal safety hazard," as required by the statute, § 624.714, subd. 5(c). The Hennepin County Municipal Court affirmed the denial. A three-judge panel of the district court affirmed the municipal court's order, and plaintiff appealed by leave of this court. We affirm.

Appellant Atkinson, a law-abiding citizen, seeks a handgun permit to continue his pre-1975 practice of carrying a loaded pistol in the glove compartment of his automobile "while traveling appreciable distances away from [his] home on public roads and highways."

In 1975, the Minnesota Legislature enacted legislation which requires that, in order for a person to carry or possess a pistol in a public place, he or she must first obtain a permit from the local police chief or county sheriff. Minn.Stat. §§ 624.711–624.717 (1978). In order to obtain such a permit, an individual must establish that he has "an occupation or personal safety hazard requiring a permit to carry." Minn.Stat. § 624.-714, subd. 5(c).

No permit is required of a person who wishes to keep a pistol at home or at work, to carry the pistol between work and home or between home and the repair shop, or to carry a pistol in the woods, fields, or on water for hunting or target shooting. Minn.Stat. § 624.714, subd. 9(a), (b), (c), (d).

Nor is a permit required for transporting a pistol anywhere, as long as it is unloaded and encased. Minn.Stat. § 624.714, subd. 9(e). Plaintiff here seeks to carry a loaded pistol, uncased, in his automobile for travel other than between home and work or between home and the repair shop.

Two issues are raised by this appeal:

1. Is there an absolute constitutional or common-law right to carry a loaded gun on public highways?

2. Does travel for appreciable distances on the public roads constitute a "personal safety hazard" within the meaning of the statute?

1. We are asked to recognize an absolute right to carry weapons abroad—in this case, to carry a loaded pistol in an automobile absent any showing of particularized need for such a weapon. Plaintiff argues that the common law has long recognized an individual right to carry weapons for self-defense. Although he recognizes that the Minnesota Constitution, unlike that of other states, contains no express reference to the right to bear arms for self-defense, he urges that this right, like other "organic" rights, is preserved in Article I, Section 16, which provides: "The enumeration of rights in this constitution shall not be construed to deny or impair others retained by and inherent in the people." He argues further that the U.S. Constitution's guarantee to the states of a "republican form of government" requires that state constitutions be interpreted consistent with historical republican principles—

among them the recognition of a natural common-law right to bear arms for self-defense.[1] Courts and legal scholars, considering the same historical documents that appellant uses to support his common-law right to carry weapons for self-defense, have reached the conclusion that any such right was not absolute. "Weapon bearing was never treated as anything like an absolute right by the common law. It was regulated by statute as to time and place as far back as the Statute of Northampton in 1328 and on many occasions since." *United States v. Tot,* 131 F.2d 261, 266 (3rd Cir. 1942); *Burton v. Sills,* 53 N.J. 86, 99–100, 248 A.2d 521 (1968), *appeal dismissed* 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 748 (1969); *see* 79 Am.Jur.2d, *Weapons and Firearms,* § 4 (1975).

One commentator, discussing the Statute of Northampton, concludes: "Whatever the purpose of this statute, whether to preserve game or the public peace, yet read in connection with the earlier statute of Edward III, it shows that a right to keep and bear arms was not regarded as a fundamental right of every Englishman." Emery, *The Constitutional Right to Keep Arms,* 28 Harv.L.Rev. 473, 473–74 (1915). Another commentator, examining the Assize of Arms, Magna Carta, the Statute of Northampton, and finally the Declaration of Rights, accepted by William and Mary in 1689, describes the scope of the right to bear arms which was recognized at that time as follows:

---

1. Plaintiff has not grounded his argument on the Second Amendment to the United States Constitution, which provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." However, his rather perplexing argument refers repeatedly to the historical notion of a militia composed of all able-bodied men, a notion which influenced the adoption of the Second Amendment.

There seems little doubt that the Second Amendment would have no application to this case. The Second Amendment is a check on the powers of Congress, not the states, and it is not likely to be held applicable against the states via the Fourteenth Amendment. *Miller v. Texas,* 153 U.S. 535, 14 S.Ct. 874, 38 L.Ed.

812 (1894); *Burton v. Sills,* 53 N.J. 86, 248 A.2d 521 (1968), *appeal dismissed* 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 748 (1969).

Even as against the United States, furthermore, the Second Amendment protects not an individual right but a collective right, in the people as the group, to serve as militia. *United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939); *Junction City v. Lee,* 216 Kan. 495, 532 P.2d 1292 (1975). Thus, the Second Amendment imposes no limitation on a state legislature's power to prohibit individuals from carrying deadly weapons, where the prohibition will not interfere with the preservation or efficiency of the militia. *See* Annot., 37 A.L.R.Fed. 696 (1978).

The purpose, and meaning of, the right to have arms recognized by these provisions is clear from their historical context. Protestant members of the militia might keep and bear arms in accordance with their militia duties for the defense of the realm * * *. There was obviously no recognition of any personal right to bear arms on the part of subjects generally, since existing law forbade ownership of firearms by anyone except heirs of the nobility and prosperous landowners. * * There was no individual right to bear arms; the rights of subjects could be protected only by the political process and the fundamental laws of the land.

Weatherup, *Standing Armies and Armed Citizens: An Historical Analysis of the Second Amendment*, 2 Hastings Const.L.Q. 961, 973–74 (1975).

Still another writer, considering historical documents, has concluded:

Since a specific "right to bear arms" has not manifested itself in any other constitutional schemes, it seem a peculiar Anglo-American phenomenon. Nowhere is there any respectable authority for the proposition that, as of 1791, a guarantee of the right to bear arms extended generally to personal self-defense as that concept was applied in either the common law or in any constitutional system.

Mosk, *Gun Control Legislation: Valid and Necessary*, 14 New York L.F. 694, 707 (1968).

Whatever the scope of any common-law or constitutional right to bear arms, we hold that it is not absolute and does not guarantee to individuals the right to carry loaded weapons abroad at all times and in all circumstances.

■ 2. There being no absolute common-law constitutional right to carry weapons abroad for individual self-defense, the state may reasonably exercise its police power to regulate the carrying of weapons by individuals in the interest of public safety. Exercise of the state's police power must be upheld unless it bears no relation to public health, safety, morals, or general welfare. The burden is on the person chal-lenging the state's exercise of its police power to establish that no reasonable relationship exists. *County of Freeborn v. Claussen*, 295 Minn. 96, 203 N.W.2d 323 (1972); *Naegele Outdoor Advertising Co. v. Village of Minnetonka*, 281 Minn. 492, 162 N.W.2d 206 (1968).

On two occasions we have articulated the purpose of the handgun permit statute. In *Blore v. Mossey*, 311 Minn. 288, 249 N.W.2d 447 (1976), we rejected plaintiff's argument that because, when carrying a pistol under circumstances where no permit is necessary, he was always subject to the "hazard" that a police officer might doubt his word and arrest him, he had a "personal safety hazard" justifying the grant of a permit. Under that logic, everyone would be entitled to a permit, the wrong result because "[t]he obvious intent of [the 'personal safety hazard' requirement] is to restrict the class of persons entitled to permits." *Id.* at 290, 249 N.W.2d at 448.

The following year, in *State v. Paige*, 256 N.W.2d 298 (Minn.1977), we identified the sound public policy reason behind that restriction:

[T]he statute is intended to prevent the possession of firearms in places where they are most likely to cause harm in the wrong hands, i. e., in public places where their discharge may injure or kill intended or unintended victims. The only exception to this rule is for persons who have demonstrated a need or purpose for carrying firearms and have shown their responsibility to the police in obtaining a permit.

256 N.W.2d at 303. The court characterized the effect of the gun control legislation as a general prohibition against carrying pistols in certain places. A particular need for carrying a pistol must be demonstrated before the permit will be granted. The requirement of a showing of particularized need and responsibility for carrying a loaded weapon other than between home and work or the repair shop is well founded on a policy of preserving human life and maintaining peace. *Accord, State v. Ogata*, 572 P.2d 1222 (Haw.1977).

■ Plaintiff urges this court to follow the Washington County District Court Appeals Panel decision in *Application of Vruno*, No. 46702 (filed January 18, 1978), where two judges reversed a denial of a pistol permit to a law-abiding citizen who sought the permit for no more pressing reason than plaintiff's here: in order to continue his past practice of carrying a loaded pistol in his glove compartment when traveling appreciable distances on the public highways. That decision rested on the language of the preamble to the gun control law, which expresses the legislature's intent not to "restrict the use of pistols by law-abiding citizens." Minn.Stat. § 624.711 (1978). This decision, as appellant knows, is not binding on this court. Responding to the rationale of the decision, however, it should be noted that, while general introductory or explanatory provisions can be considered in interpreting an ambiguous statute, they must give way to the specific language of § 624.714, subd. 5(c). Minn.Stat. § 645.26, subd. 1. We have previously interpreted that specific language as an attempt to "restrict" the class of persons entitled to permits. *Blore v. Mossey*, 311 Minn. 288, 249 N.W.2d 447 (1976).

The legislative intention to require an applicant to demonstrate a "personal safety hazard" which entitles him to a pistol permit is not unusual. A requirement that an individual seeking to carry a handgun make a showing of particularized need has been upheld and construed narrowly in a number of cases. In *Siccardi v. State*, 59 N.J. 545, 284 A.2d 533 (1971), the New Jersey Supreme Court affirmed the denial of a handgun permit even for carrying a handgun between home and work. There, plaintiff, a theater manager, stated in his application that his job required him to carry large sums of money to the bank depository late at night in a dangerous section of town and that his life had been threatened both in person and over the telephone.

Despite this far more detailed and particularized showing of need than made by plaintiff Atkinson, the court upheld the permit denial, accepting the police chief's view that the threats "were not serious in na-

ture." 59 N.J. at 558, 284 A.2d at 540. The court noted the expert testimony which established that "[t]he grant of a permit to him to carry a concealed handgun on his person or in his automobile would * * * afford hardly any measure of self protection and would involve him in the known and serious dangers of misuse and accidental use." Finally, the court noted the fact that a grant of a permit to Siccardi would open the way to grants of handgun permits to countless businessmen who feel uncomfortable carrying large sums of money. "Surely such widespread handgun possession in the streets, somewhat reminiscent of frontier days, would not be at all in the public interest." *Id.* *See also Reilly v. State*, 59 N.J. 559, 284 A.2d 541 (1971).

In *Jordan v. District of Columbia*, 362 A.2d 114 (D.C.Ct.App.1976), the court affirmed the denial of a concealed pistol permit to plaintiff under regulations drawn up by the permit-granting authority, which provided that a permit application must allege serious threats of death or serious bodily harm and must state that such threats are of such a nature that possession of a weapon is necessary. In *State v. Storms*, 112 R.I. 121, 308 A.2d 463 (1973), the court approved legislation under which a pistol permit would be granted only when the licensing authorities were satisfied that "the applicant had good reason to fear an injury to his person or property or has any other proper reason for carrying a pistol, * * * *." 308 A.2d at 465, 466. *See also Garcia v. State*, 260 Ind. 131, 292 N.E.2d 810 (1973); *but see Blumenfeld v. Codd*, 89 Misc.2d 837, 393 N.Y.S.2d 145 (1977).

■ In the instant case, plaintiff Atkinson seeks to carry a loaded gun in his car while traveling "appreciable distances" on the public highways. We find it difficult to believe that such travel was intended by the legislature to be a personal safety hazard. To accept plaintiff's argument would "gut" the statute; virtually every person could get a permit to carry a loaded pistol in the glove compartment of his or her car. The hazard plaintiff has identified is vague,

general, and speculative. He has not made the showing of real and immediate danger which the statute requires in order to justify issuance of a handgun permit. The permit was properly denied.

Affirmed.