**William Andrew MASTERS,
II, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–82–153–CR.**

Court of Appeals of Texas,
Austin.

June 22, 1983.

William Andrew Masters, II, pro se.

Margaret Moore, County Atty., Claire Dawson-Brown, Asst. County Atty., Austin, for appellee.

Before PHILLIPS, C.J., and POWERS and GAMMAGE, JJ.

PHILLIPS, Chief Justice.

William Andrew Masters, II, appeals the trial court's judgment, based upon his plea of no contest,[1] which convicted him of "un-

---

1. Pursuant to Tex.Code Cr.P.Ann. art. 44.02 (Supp.1974), appellant may only appeal, with-

out the trial court's permission, those matters raised by a written motion filed prior to trial.

lawfully carrying a weapon"[2] and ordered him to pay a fine of one dollar.

On the early afternoon of August 6, 1981, appellant was stopped at a busy intersection in north Austin, Texas, by patrol officers of the Austin Police Department. The officers stated that they stopped appellant because he was carrying two "swordlike" weapons in his belt. Upon closer examination and questioning of appellant, the officers discovered that the weapons were "sais"—weapons used in the practice of Korean martial arts. When asked why he was carrying the weapons, appellant vaguely responded that he "might need them," that the police "ought to understand," and that "he wanted to be prepared."

Appellant contends that he is constitutionally entitled to carry these weapons, and further argues that any law which would prohibit his keeping and bearing arms is in violation of the express terms of the United States Constitution, and the Texas Constitution. We disagree.

## I.

The Second Amendment to the United States Constitution states:

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

In *United States v. Cruikshank*, 92 U.S. 542, 23 L.Ed. 588 (1875), the United States Supreme Court stated that the Second Amendment granted the individual no right to keep and bear arms, but instead limited the power of the national government over the States and their residents. The Supreme Court further stated that the right to bear arms was contingent upon their being borne by the people for lawful purposes in lawful ways, and that the States, through the exercise of their "police powers," were obligated to protect all the people's various rights through reasonable regulation.

In *Robertson v. Baldwin,* 165 U.S. 275, 281–82, 17 S.Ct. 326, 329, 41 L.Ed. 715 (1896), the United States Supreme Court expanded the rationale expressed in *Cruikshank* and expressly stated, in passing on another issue of Constitutional interpretation, that, "The right of the people to keep and bear arms is not infringed by laws prohibiting the carrying of concealed weapons."

In *United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1938), the United States Supreme Court again reiterated that the Second Amendment grants no right to the individual to keep and bear arms, but that it instead denies the national government the power to disarm the State militias. In *Miller,* the Supreme Court acknowledged the States' implicit authority to control by reasonable regulation its residents' keeping and bearing of arms.

■ Accordingly, after reviewing the above mentioned primal authority and the cited cases' progency,[3] we hold that the Second Amendment to the United States Constitution does not contemplate—within its express limitation on the powers of the national government—granting appellant the right to carry "swords" upon his person in public in the manner and for the purpose

Accordingly, this appeal is limited in those matters filed in appellant's *pro se* pretrial motion to quash the indictment overruled by the trial court.

**2.** Texas Pen.Code Ann. § 46.02 (1974) states, in relevant part:

(a) A person commits an offense if he intentionally and knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club.

**3.** *United States v. Oakes,* 564 F.2d 384 (10th Cir.1977), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978); *United States v. Warin,* 530 F.2d 103 (6th Cir.1976), *cert. de-*

*nied,* 426 U.S. 948, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976); *Eckert v. City of Philadelphia,* Pa., 477 F.2d 610 (3rd Cir.1973), *cert. denied,* 414 U.S. 839, 94 S.Ct. 89, 38 L.Ed.2d 74 (1973); *Cody v. United States,* 460 F.2d 34 (8th Cir. 1972), *cert. denied,* 409 U.S. 1010, 93 S.Ct. 454, 34 L.Ed.2d 303 (1972); *Application of Atkinson,* 291 N.W.2d 396 (Minn.1980); *State v. Rupp,* 282 N.W.2d 125 (Iowa 1979); *State v. Sanders,* 357 So.2d 492 (La.1978); *Com. v. Davis,* 369 Mass. 886, 343 N.E.2d 847 (1976); *State v. Skinner,* 189 Neb. 457, 203 N.W.2d 161 (1973).

stated. Therefore, we hold that appellant has not been denied any right guaranteed him by the United States Constitution by his conviction for violating Tex.Pen.Code Ann. § 46.02 (1974).

## II.

Having found that the United States Constitution's Second Amendment does not grant the individual the right to keep and bear arms, but instead serves as an express limit on the power of the national government over the States, we turn to our own State Constitution to determine if appellant has been wrongly convicted. In so doing, we find that Art. I, § 23 states:

> Every citizen shall have the right to keep and bear arms in the lawful defense of himself or the State; but the Legislature shall have the power, by law, to regulate the wearing of arms, with a view to prevent crime.

As is easily seen, the Texas Constitution gives the right to keep and bear arms directly to the individual, unlike the United States Constitution which merely implicitly protects the right of the States to maintain armed militias under State control. But, as our State Constitution grants and guarantees a direct right to the individual, our State Constitution limits that right by implicitly mandating the Legislature to enact reasonable regulations concerning the keeping and bearing of such arms in order that the Legislature prevent disorder in our society.

In *English v. State*, 35 Tex. 473, 477–79 (1871),[4] our State's Supreme Court, sitting in criminal appellate review of a like attack on a statute quite similar to § 46.02, stated:

> It will doubtless work a great improvement in the moral and social condition of men, when every man shall come fully to understand that, in the great social com-

pact under and by which States and communities are bound and held together, each individual has compromised the right to avenge his own wrongs and must look to the State for redress. We must not go back to that state of barbarism in which each claims the right to administer the law in his own case; and that law being simply the domination of the strong and the violent over the weak and the submissive.

> It is useless to talk about personal liberty being infringed by laws such as that under consideration. The world has seen too much licentiousness cloaked under the name of natural and personal liberty; natural and personal liberty are exchanged, under the social compact of States for civil liberty . . . . It is not our purpose to make an argument in justification of the law. The history of our whole country but too well justifies the enactment of such laws.

These words written more than a century ago ring with a clarity which is unquestionably applicable and controlling today. The need for reasonable regulation of the wearing of arms by the Legislature is no less needed in today's modern world as in the development of our State's frontier generations ago. As long as that need exists, the Legislature will be normally charged with its Constitutional duty to regulate the carrying of weapon, a duty we cannot and will not deny it.

■ In reviewing this State's jurisprudence, we find that this penal statute and its predecessors have been universally held constitutional by the Courts of this State under the enumerated power delegated by the people to the Legislature to enact laws regarding the bearing of arms in Art. I, § 23 of our State's Constitution.[5] Accord-

---

4. Although we are well aware of the historical setting in which *English v. State*, supra, was decided, we are ever mindful that *this* Court was the Supreme Court of Record in this State; that the Court's judges swore an oath to uphold the United States Constitution; and that we are not the first court to employ this decision is precedent. *See Koy v. Schneider*, 110 Tex. 369,

221 S.W. 880, 891 (1920); *Collins v. State*, 501 S.W.2d 876, 877 (Tex.Cr.App.1973); *Curson v. State*, 166 Tex.Cr.R. 272, 313 S.W.2d 538, 539 (1958).

5. *Roy v. State*, 552 S.W.2d 827 (Tex.Cr.App. 1977); *Collins v. State*, 501 S.W.2d 876 (Tex. Cr.App.1973); *Webb v. State*, 439 S.W.2d 342

ingly, we hold that appellant has suffered no deprivation of any right guaranteed him by the Texas Constitution in his conviction for violating Tex.Pen.Code Ann. § 46.02 (1974).

Having found no denial of appellant's rights guaranteed him by either the United States Constitution or the Texas Constitution, in regard to his claimed right to keep and bear arms, we affirm the trial court's judgment.

POWERS, Justice, concurring.

I disagree with various parts of the majority opinion but concur in the result reached by them.

I disagree with the majority's assertion that the Legislature is, by Tex. Const.Ann. art. I, § 23 (1955), "charged with the ... duty to regulate the carrying of weapons," or as stated elsewhere in the opinion, that art. I, § 23 has the effect of "mandating the Legislature to enact reasonable regulations concerning the keeping and bearing" of arms in order to prevent disorder in society. I do not know how the majority reaches such conclusions, for art. I, § 23 merely states that "the Legislature shall have *power*, by law, to regulate the wearing of arms, with a view to prevent crime." (emphasis added) The Legislature is free to regulate the wearing of arms, or not, as it sees fit.

I disagree with what appears to be the majority's invocation and use of *English v. State,* 35 Tex. 473 (1871) for the purpose of *stare decisis.* That decision was made by the semicolon court, a court established by a State constitution (that of 1869) which was the product of military occupation and the disfranchisement of most of the State's inhabitants, circumstances which deprive that court's decisions of *stare decisis* effect. *See* Norvell, *Oran M. Roberts and the Semicolon Court,* 37 Texas L. Rev. 279, 288 (1959); Ramsdell, Reconstruction in Texas 200–68 (1910).

I disagree with the numerous statements in the majority opinion to the effect that a given constitutional provision "gives" or "grants" to individuals a "right," or that a specific "right" could have been "given" or "granted" by the constitution but was not. Such language suggests that without constitutional authorization, the right would not exist in an individual person. In other words, if the Second Amendment does not "give" or "grant" the right to keep and bear arms, individuals would not possess that right. The theory of the majority contravenes the basic constitutional principles that individuals possess immunities and prerogatives by the very fact that they are human beings, and they retain these rights save to the extent they have voluntarily ceded them to a sovereign power, as in the Federal and State constitutions, where they expressly reserved all rights not granted expressly or by implication, including those immunities and prerogatives listed in the Bill of Rights, upon which the government of the sovereign is forbidden to infringe. U.S. Const. amend. IX; Tex. Const.Ann. art. 1, § 29 (1955).

Concerning the merits of the appeal, I suggest that the constitutional issues are a good deal more complicated and unsettled than the majority opinion implies. *See, e.g.,* Cooley, Principles of Constitutional Law 270 ("It [the Second Amendment to the Constitution of the United States] was adopted, with some modification and enlargement, from the English Bill of Rights of 1688, where it stood as a protest against arbitrary action of the late dynasty in disarming the people, and as a pledge of the new rulers, that this tyrannical action should cease. The right declared was meant to be a strong moral check against the usurpation of arbitrary power by rulers, and as a necessary and efficient means of regaining rights temporarily overturned by usurpation."); Stevens, Sources of the Constitution of the United States 222–23 (1894) ("The second amendment deals with the question of a trained militia, and the right

(Tex.Cr.App.1969); *cert. denied,* 396 U.S. 968, 90 S.Ct. 450, 24 L.Ed.2d 434 (1969); *State v.*

*Duke,* 42 Tex. 455 (1875).

of the people to bear arms,—a right involving the latent power of resistance to tyrannical government.").

Even the collective theory of the Second Amendment, to the effect that the right recognized therein is that of the State to maintain an armed militia, is questioned for the difficult internal inconsistencies which that theory produces within the Constitution itself. *See* Levin and Saxe, *The Second Amendment: The Right to Bear Arms,* 7 Hous.L.Rev. 1, 15–19 (1969).

Whatever may be the effect and meaning of the Second Amendment at various points in our constitutional history, we are presented in the present case with a ground of error wherein appellant claims only that his right to carry the weapon in question was *absolute* under that Amendment. I disagree.

Even if individuals do possess under the Second Amendment a fundamental right to keep and bear weapons, which the Constitution guarantees against State as well as federal infringement, it plainly is not an absolute right in the sense that it must prevail in all imaginable circumstances and in the sense that the scope of the protection given the right, by the Second Amendment, must be determined solely from a literal reading of the phrase "the right of the people to keep and bear arms, shall not be infringed." For example, I should not think that an individual under the Second Amendment is guaranteed the right to keep and use, free from any statutory restraint whatever, a supply of biological warfare cannisters, a stock of surface-to-air missiles, grenades, flamethrowers, or howitzers and the ammunition for them. Rather, the right I have assumed to be protected by the Second Amendment from governmental infringement would plainly allow some scope for an exercise of the State's police power to preserve public safety and health, commensurate with whatever legitimate State interest may be at stake in the circumstances. But such matters are not before us, for appellant does not attack the reasonableness of Tex.Pen.Code Ann. § 46.02 (1974), as applied to the weapon in question. He prefers instead to make his complaint upon the sole ground that the statute is unconstitutional because under the Second Amendment his right to carry the weapon in question was and is absolute. It is not. We need say no more than that and upon that basis, I concur in the result reached by the majority.