In re Application of Timothy John HOFFMAN for Handgun Permit Pursuant to Minnesota Statute 624.714.

No. C8–88–720.

Court of Appeals of Minnesota.

Oct. 11, 1988.

Review Denied Nov. 16, 1988.

Michael J. McCauley, Mankato City Atty., Mankato, for appellant City of Mankato.

John M. Riedy, McLean Peterson Law Firm, Mankato, for respondent Hoffman.

Heard, considered and decided by FORSBERG, P.J., and RANDALL and LOMMEN,* JJ.

## OPINION

RANDALL, Judge.

Respondent Timothy John Hoffman applied for a permit to carry a handgun in a public place, pursuant to Minn.Stat. § 624.714, subd. 5 (1986), in May 1987. His application was initially denied, as Hoffman had not obtained a firearm safety certificate as required by section 624.714, subdivision 5(b). Hoffman obtained his safety certificate and applied again. This application was granted, and a permit was issued. The permit was revoked two days later by the Mankato Department of Public Safety on the ground that Hoffman had failed to show a need for the firearm permit. Hoffman surrendered his permit to the Mankato Department of Public Safety pending court action.

Pursuant to section 624.714, subdivision 12, respondent Hoffman appealed the denial of his permit to the Blue Earth County District Court. Following a hearing, the

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

district court directed issuance of the handgun permit. The City of Mankato has appealed. We affirm.

## FACTS

Respondent Timothy John Hoffman is a security guard employed by American Security and Protection Inc. (ASP). Pursuant to a contractual agreement between Menard's and ASP, he works as a security guard for the Menard's retail store and lumberyard in Mankato. As a specific condition of his employment with ASP, Hoffman is required to have a permit to carry a handgun.[1]

Hoffman first applied for this permit on May 21, 1987. His application was denied because he did not have a firearm safety certificate required by Minn.Stat. § 624.714, subd. 5(b). Following successful completion of a safety course given by an officer of the Mankato police force, Hoffman received his firearm safety certificate and applied for a handgun permit for the second time on October 14, 1987. The permit was issued on October 20. Two days later, however, his permit was revoked by the Mankato Department of Public Safety. The revocation letter stated that "the functions performed for American Security and Protection Company, while working for Menard's Lumber in Mankato, does not meet the established criteria required for carrying of a handgun." Hoffman surrendered his permit and appealed to the Blue Earth County District Court.

The statute governing handgun permits reads as follows:

No permit to carry shall be granted to a person unless the applicant:

(a) Is not a person prohibited by section 624.713 from possessing a pistol;

(b) Provides a firearms safety certificate recognized by the department of natural resources, evidence of successful completion of a test of ability to use a firearm supervised by the chief of police or sheriff or other satisfactory proof of ability to use a pistol safely; and

(c) Has an occupation or personal safety hazard requiring a permit to carry.

Minn.Stat. § 624.714, subd. 5. The parties agree that Hoffman has met the first two requirements of this statute. The revocation of his permit to carry was based on a determination by the Mankato Director of Public Safety that Hoffman does not have an occupation or personal safety hazard requiring a permit to carry.

In denying Hoffman's permit, Glenn Gabriel, the Director of Public Safety for the City of Mankato, relied on four criteria developed by the Mankato Department of Public Safety. These criteria are:

1. Whether the applicant has duties exposing him to the likelihood of great bodily harm or death.

2. Whether the applicant has responsibility for guarding cash or liquid assets.

3. Whether the applicant is likely to be kidnapped, robbed or extorted.

---

**1.** The pertinent parts of ASP's manual are as follows:

POLICY/PROCEDURE 168   SUBJECT: GUARD HOUSE DUTIES
NIT: LUMBERYARD DIVISION      FOR   SECURITY
               GUARDS

PAGE: 1          DATE:  JUNE 18, 1987

I. GENERAL STATEMENT: The following procedure will be used and adhered to by all Security Guards providing services to Menard Cashway Lumber, Division of Menard, Inc. when:

\* \* \*

II. *Specific Points*: All Security Guards that provide this service to a Menard Cashway Lumber Unit, Division of Menard, Inc., will be armed:

4. Whether the presence of a firearm is a greater threat to safety than its absence.

These criteria have not been formally adopted, are not published, are not made available to the public, and applicants for handgun permits are not made aware that their application will be reviewed against these criteria.

At the district court hearing on Hoffman's application, Warren R. Johnson, the vice president and corporate secretary of Menard's, testified that Menard's has a longstanding written policy requiring that security guards at store locations carry handguns. The policy was originally intended to prevent theft and robbery. Since Menard's began employing armed security guards, the company has not had an armed robbery at any of its stores in the five-state area. Johnson believes Menard's experience has proven the deterrent effect of armed guards.

The court also heard testimony on the duties of security guards at the Mankato store. A guard is stationed at a guard shack outside the main building, approximately 100 yards from the cashiers. The guard shack is located at the gate to the outside lumber yard. The guards' duties are to check persons and vehicles going into the lumber yard; check loads, vehicles and persons leaving the lumber yard and record their license numbers; and check and secure the building at approximately 3:00 a.m. The court also heard from Thomas Totland, supervisor of security for ASP at Menard's in Mankato. According to Totland, three guards presently working at Menard's, who live outside the City of Mankato, have been able to obtain handgun permits from the Blue Earth County Sheriff. Hoffman, as well as another security guard who lives in the City of Mankato, have been denied permits by the Mankato chief of police.[2]

The last witness to testify was Lawrence May, a private detective associated with American Security Corporation in St. Paul. May, who has 29 years of security experience, testified that he was aware of no other retail setting with armed guards, except Menard's. According to May, the standards of the American Society of Industrial Security provide that security personnel should be armed only when it is probable that weapons will be necessary to resist actual or threatened fatal force against the person to whom the firearm has been issued or against another person whom the security guard is under a duty to protect. May does not assign armed personnel from his security to retail settings. In fact, American Security Corporation has refused to provide armed guards for Menard's.

Based on the evidence at the hearing, the district court ordered the Mankato Department of Public Safety to issue the handgun permit to Hoffman. The district court reasoned that Hoffman has an occupation requiring a permit to carry. This determination was based on Hoffman's testimony that obtaining a permit to carry a handgun was, and continues to be, a condition of his employment. Since Hoffman is required to carry a handgun in order to remain employed, the district court reasoned he has an occupation requiring a permit to carry.

The trial court, not as part of its holding but as a general observation, stated that although it felt Hoffman was entitled to the handgun permit, the court believed that Menard's policy regarding armed security guards was unreasonable. The court stated further that "the policy of Menard's is not relevant to this proceeding, and this observation has been added only to inform petitioner and Menard's that petitioner has not made an objective showing of a need for a handgun permit."

The City of Mankato appealed the order directing the Department of Public Safety to issue a handgun permit to Hoffman.

A–3. All Security Guards are required to wear a *real* weapon (fire arm) while on duty at the gate house. This weapon *will be* loaded. (emphasis in original.)

---

**2.** Applicants for handgun permits make them to the chief of police if they reside inside a city or municipality, and to the county sheriff when they reside outside the city limits. Minn.Stat. § 624.714, subd. 2.

Hoffman filed a notice of review on the court's finding that he did not make an objective showing of a need for a handgun and that Menard's policy of requiring security guards to carry handguns is unreasonable.

## ISSUES

1. Was the trial court's issuance of a permit to carry a pistol under Minn.Stat. § 624.714, subd. 5, proper?

2. To what extent can local law enforcement control the issuance of handgun permits?

3. Did the trial court err in finding that the Menard's policy requiring its security guards to carry handguns was unreasonable?

## ANALYSIS

### I.

*Occupational need*

■ Minn.Stat. § 624.714, subd. 5(c), plainly provides for the issuance of a handgun permit when an applicant who is otherwise qualified has either an occupation that requires a handgun *or* a personal safety hazard requiring a permit to carry a handgun. The permit in this case was granted because Hoffman has an occupation that requires that he carry a handgun.

The City of Mankato argues Hoffman has an employer that requires that he carry a handgun, not an occupation that requires it. The city argues Hoffman has failed to establish an objective need for a permit to carry a handgun; therefore, the district court erred in ordering that one be issued. In support of this argument, the city cites *Application of Atkinson*, 291 N.W.2d 396 (Minn.1980), in which the Minnesota Supreme Court stated, "[a] particular need for carrying a pistol must be demonstrated before the permit will be granted." *Id.* at 399.

*Atkinson* is not relevant to the issue in this case. As noted above, the statute provides for issuance of a permit to carry a handgun when the applicant has an occupation *or* personal safety hazard. *Atkinson*

dealt with an application based on a *personal safety hazard*. The applicant in *Atkinson* sought a permit to carry a loaded pistol in the glove compartment in his car "while traveling appreciable distances away from [his] home on public roads and highways." *Id.* at 397. The court found this was not what the legislature meant by the term "personal safety hazard." *Id.* at 400.

The application in this case is not based on a personal safety hazard. It is based on Hoffman's occupation. The City of Mankato wants to require respondent to satisfy both prongs of section 624.714, subd. 5(c). The city argues that even if you need a handgun permit in your occupation, you must also show that your occupation entails a personal safety hazard. We find the trial court properly construed the statute as requiring an occupation that requires a handgun *or* a personal safety hazard, so that fullfillment of either criteria satisfies the statute. We affirm the trial court's finding that the applicant demonstrated entitlement under occupation.

### II.

*Permit criteria by local law enforcement agencies*

■ The Mankato Department of Public Safety has developed four criteria for determining whether an applicant for a handgun permit has an occupation requiring such a permit. These criteria are requirements that must be met in addition to the requirements of section 624.714, subd. 5. Menard's contends these criteria impermissibly infringe on the statutory directive of Minn.Stat. § 624.717 (1986), which provides:

> Sections 624.711 to 624.716 shall be construed to supersede municipal or county regulation of the carrying or possessing of pistols * * *.

We agree. Uniform, statewide criteria are necessary to avoid the situation presented in this case: two ASP security guards who live in Mankato have been denied permits to carry handguns by the Mankato Department of Public Safety

while on the job at Menard's. Three ASP security guards who live outside of Mankato have been granted permits to carry handguns by the Blue Earth County Sheriff's Department while performing identical jobs.

The legislature conferred on law enforcement agencies the duty and obligation to examine handgun permit applications. *See generally* Minn.Stat. § 624.714, subds. 1–13. However, the legislature set out the applicable criteria in § 624.714, subd. 5, that law enforcement agencies must apply. Section 624.717 was specifically passed to remove the subjective town-to-town and county-to-county private criteria of the type employed by the City of Mankato.

### III.

*Reasonableness of Menard's Policy*

Respondent seeks review of the trial court's finding that, although he had a bona fide occupational necessity because of Menard's policy, Menard's policy is unreasonable. We agree with respondent. The record easily establishes that Menard's policy of requiring security guards to have handgun permits is well thought out, long established, and successful. The city argues that Menard's policy requiring its security guards to carry handguns is unreasonable and will allow every employer, even one selling popcorn and candy, to arm its employees merely by having an announced policy that their clerks carry handguns. We do not accept this argument.

The city uses the argument in an attempt to raise the spectre of problems down the road to gain reversal here. We find that shams and ruses can be handled if, and when, they arise. Even appellant does not argue that Menard's policy is a sham. The city simply argues, based on May's testimony, that Menard's policy is unreasonable. Based on this record, the security policy of Menard's, a large, multi-state retail and wholesale lumberyard and builder, is reasonable.

### DECISION

The district court properly ordered the issuance of a handgun permit to respondent.

Criteria developed by the Mankato Department of Public Safety for processing permits to carry handguns are impermissively more restrictive than statutory standards. The role of law enforcement is to scrutinize permit applications pursuant to legislative standards.

On these facts Menard's policy of requiring security guards to be armed is reasonable.

AFFIRMED.

A. PAUL LOMMEN, J., dissents.

A. PAUL LOMMEN, Judge (dissenting).

I respectfully dissent.

The purpose of section 624.714 is to restrict the class of persons entitled to permits to carry handguns in public places. *Blore v. Mossey*, 311 Minn. 288, 290, 249 N.W.2d 447, 448 (1976). The Minnesota Supreme Court has stated:

> The statute is intended to prevent the possession of firearms in places where they are most likely to cause harm in the wrong hands, i.e., in public places where their discharge may injure or kill intended or unintended victims. The only exception to this rule is for persons who have *demonstrated a need* or purpose for carrying firearms and have shown their responsibility to the police in obtaining a permit.

*State v. Paige*, 256 N.W.2d 298, 303 (Minn. 1977) (emphasis added). "A particular need for carrying a pistol must be demonstrated before the permit will be granted." *Application of Atkinson*, 291 N.W.2d 396, 399 (Minn.1980).

The majority attempts to distinguish these cases on the basis that they concern application for permits based on personal safety hazards, whereas Hoffman's application was based on his occupation. I believe this is a distinction without a difference.

The trial court in this case ordered the Mankato Department of Public Safety to issue a permit to respondent because his

occupation requires that he carry a handgun. It should be noted, however, that respondent's occupation requires him to carry a handgun only because respondent's employer requires he carry a handgun. The employer's requirement, in turn, is based on the policy of Menard's.

I agree with the argument of the city: the purpose of the statute, limiting the class of persons entitled to carry handguns in public, is ill-served by permitting an employer's subjective fears to override the objective showing of need required in *Blore, Paige,* and *Atkinson.* The majority's holding will allow handguns " * * * in public places where their discharge may injure or kill intended or unintended victims." *Paige,* 256 N.W.2d at 303.

I am similarly unconvinced that the criteria developed by the Mankato Department of Public Safety constitute additional requirements for a handgun permit. If, as I believe is the case, an applicant must demonstrate an objective need before a handgun permit will be issued, there must be criteria to judge whether that showing has been made. The criteria in this case represent a laudable effort by the Mankato Department of Public Safety to ensure that applications for handgun permits are granted or denied based on specific, articulable criteria applied to all applications rather than on whim or caprice.

Finally, I dissent from the majority's determination of the reasonableness of Hoffman's employer's policy requiring handguns. The wisdom of the policy is debatable; that, however, is not the point. The trial court's finding of fact cannot be reversed by this court unless clearly erroneous. Minn.R.Civ.P. 52.01. The majority does not demonstrate what is clearly erroneous about the trial court's finding of unreasonableness. I believe this finding is amply supported by the testimony of Lawrence May, whose testimony on the standards of the American Society of Industrial Security, the absence of security guards in other retail settings and particularly May's refusal to supply armed guards, forcing Menard's to take its business elsewhere, demonstrated the unreasonableness of the policy. I agree with counsel for the City of Mankato: the possible use of deadly force to guard lumber and insulation is unreasonable.