**In re Appeal of Denial of Application of William YOUNG for Permit to Carry Handgun.**

**No. C8–94–404.**

Court of Appeals of Minnesota.

Sept. 20, 1994.

Robert H. Wenner, Reichert Wenner, Koch & Provinzino, P.A., St. Cloud, for appellant Young.

Michael S. Jesse, Benton County Atty. and Robert B. Anderson, Asst. Benton County Atty., Foley, for respondent county.

Considered and decided by PARKER, P.J., and RANDALL and AMUNDSON, JJ.

## OPINION

RANDALL, Judge.

Appellant William Young challenges an order and judgment sustaining the denial of his application for a permit to carry a handgun in public. In denying the application, the Benton County Sheriff determined that appellant failed to demonstrate, under "new standards," a need for the permit due to an occupational or personal safety hazard within the meaning of Minn.Stat. § 624.714, subd. 5 (1992). The trial court affirmed the sheriff's determination. We reverse and remand.

## FACTS

Appellant William Young is the owner of Granite City Dental Lab, Inc., a business located in St. Cloud. Appellant is in the business of fabricating crowns and other dental prostheses and selling the finished products to dentists. The dental lab uses precious metals such as gold, silver, and, platinum in the manufacture of its products. As the owner (and employee) of the dental lab, appellant personally transports these precious metals on a regular basis. He frequently takes delivery of the precious metals at locations outside of the St. Cloud area, such as the Twin Cities, and brings them back to the lab for manufacturing. Appellant testified that the value of these shipments ranges from $3000 to $12,000. Appellant also makes deliveries of the finished products to his dentist clients.

In 1982, appellant observed a "suspicious character" outside of his business in the early morning hours. When he saw the person for the third time he called the police. According to appellant, the police advised him to apply for a gun permit. In 1982, appellant applied for and received, for the first time, a permit to carry a handgun in public. The application was approved by then Chief Deputy Frank Wippler. Thereafter, appellant applied for and received ten additional yearly permits through the Benton County Sheriff's Office, one for each year through 1992.

In July of 1993, appellant again applied for a permit to carry a handgun in public; he filled out the same application form he had completed every year for the past ten years. By letter dated July 29, 1993, however, Wippler, now the Sheriff of Benton County, notified appellant that his application was denied. The denial was based on the Sheriff's conclusion that appellant failed to demonstrate a need based on an "occupational or personal safety hazard" within the meaning of Minn. Stat. § 624.714, subd. 5 (1992).

Minn.Stat. § 624.7151, adopted in 1992, provided that all permits issued after January 1, 1993, should conform to statewide standards governing the form and contents of the permits. Those standards, however, have never been officially promulgated and disseminated.

When appellant questioned the denial of his application for a permit, Sheriff Wippler informed him by letter dated August 4, 1993, that the Commissioner of Public Safety "is adopting statewide standards," and that:

> Permits to carry a handgun in public are no longer issued to persons unless they have an occupational or personal safety hazard requiring a permit to carry. (i.e., applicant is an armed security guard, applicant has received threats of violence).

The sheriff was wrong. The standard has never changed since the beginning of the law. An "occupational or personal safety hazard" has been required by the statute since its enactment in 1975. *See* 1975 Minn.Laws ch. 378, § 4.

Appellant sought review of the denial of his application by the district court pursuant to Minn.Stat. § 624.714, subd. 12 (1992), which specifically provides that the trial court shall hear the matter "de novo without a jury." During the hearing, the sheriff testified that his conclusion that appellant's job of transporting precious metals no longer constitutes an occupational or personal safety hazard was influenced by his understanding of what type of statewide standards would eventually be adopted.

After the hearing, the trial court issued an order affirming the denial of appellant's application. In its memorandum, the trial court noted that the sheriff appropriately could be influenced by his knowledge of potential statewide issuance standards, even though none had ever been adopted.

### ISSUE

Did the trial court err by denying appellant's application for a permit to carry a handgun in public pursuant to Minn.Stat. § 624.714, subd. 5 (1992)?

### ANALYSIS

Minn.Stat. § 624.714, subd. 5 (1992) provides, that a permit to carry a handgun in public[1] will not be granted unless, among other things, the applicant has an "occupation or personal safety hazard requiring a permit to carry." The gun permit statute has contained this requirement since its original enactment in 1975. *See* 1975 Minn.Laws ch. 378, § 4.

During the years of 1982 through 1992 appellant applied for and was granted a permit to carry a handgun in public pursuant to

Minn.Stat. § 624.714, subd. 5. Appellant satisfied the requirements of the statute for eleven years in a row. It is undisputed that neither the relevant portion of the statute nor the nature of appellant's business and work environment changed between 1992 and 1993. Nonetheless, appellant's 1993 application for a permit to carry a handgun was denied.

■ Appellant argues that the sheriff and the trial court erred by relying on "nonexistent" standards in denying his application. We agree. Minn.Stat. § 624.7151 (1992) provides in part:

> By December 1, 1992, the commissioner of public safety shall adopt statewide standards governing the form and contents * * * of every application for a * * * permit to carry a pistol that is granted or renewed on or after January 1, 1993. * * * *[F]ailure of the department of public safety to adopt standards * * * shall [not] delay timely processing of applications nor invalidate permits issued on other forms meeting the requirements of [the gun permit statute].*

(Emphasis added.) The record indicates the sheriff was influenced by the legislation requiring the Commissioner to adopt future statewide standards. As noted, those standards have never been adopted.

Thus, the sheriff wrongly relied on a nonexistent change in the law. The sheriff was speculating as to how the law *might* change. The reality is the law has not changed. The legislature *recognized* the possibility that new standards might not be adopted within the time frame provided by the statute. Anticipating this possibility, the legislation specifically included a provision that under such circumstances, applicants would be entitled to the benefit of the law *as it stands*. Minn. Stat. § 624.7151.

Respondent does not claim that the first eleven permits were wrongly issued. Rather, the sheriff denied the 1993 application

---

1. Appellant does not need a permit to keep a handgun at his place of business and/or in his home. *See* Minn.Stat. § 624.714, subd. 9(a) (1992).

based on its anticipation that the law would soon be changing. We conclude that the sheriff erred by applying standards he thought might be coming into existence at some point in the future, and also erred by failing to review appellant's application based on the same standards to which appellant had been subject in the past. Appellant is entitled to have his application evaluated pursuant to the present law on the books.

Appellant testified that when he questioned the denial of his application, he was informed by the sheriff's office that new standards had been adopted. When appellant asked to see the new standards, however, none were shown to him. This is because no standards existed. Appellant was not told there were no new standards. Although it is not clear whether it was intentional, the record shows appellant was misled by the sheriff's department regarding the existence of new standards. We also note that if and when new standards actually are promulgated, they may do nothing more than standardize the form of the application. A new standard application might not even affect the actual merits of the application. We note that the issues regarding a. new standard application are not before us and should not have been before the trial court. No new standards exist.

■ We further conclude the trial court erred as a matter of law by giving deference to the sheriff's interpretation of the law. Minn.Stat. § 624.714, subd. 12 (1992) provides:

> Any person aggrieved by denial of a permit to carry may appeal the denial to the county court having jurisdiction over the county or municipality wherein the notification or denial occurred. *The matter shall be heard de novo without a jury.*

(Emphasis added).

The issue the trial court had before it was whether appellant demonstrated a need to carry a handgun based on an occupational or personal safety hazard. The trial court, however, did not address this issue. Rather, the trial court reviewed the sheriff's exercise of discretion. In its memorandum, the trial judge noted that the evaluation of a gun permit application is within the sheriff's discretion. The trial judge then went on in pertinent part to state:

> The Benton County Sheriff denied [appellant's] permit for two reasons. First, the sheriff believes that [appellant] has not shown that a permit is required by his employer, or that he is subjected to a personal safety hazard. And second, the sheriff believes that denial of the permit was appropriate based on the sheriff's understanding of the soon to be promulgated statewide standards, which are apparently stricter than in the past.

> It is well recognized that weapon violence is a growing problem, and that weapon permits should be limited accordingly. See *Application of Atkinson,* 291 N.W.2d 396 (Minn.1980). In addition, *the sheriff's knowledge of proposed statewide issuance standards,* being promulgated pursuant to Minn.Stat. § 624.7151, *can and should influence the permit applications* that have been committed to his discretion. Indeed, the sheriff has a great deal of expertise in this area, and the Court does not feel the need to reverse the sheriff's decision in the present case.

> It is true that [appellant] was issued weapon permits in the past. However, the sheriff properly considered that fact in denying the current application. The sheriff found it persuasive that [appellant] insures the materials in question, and more importantly, that he can easily arrange for their delivery by a bonded professional carrier. Indeed, in the interest of public safety, and common sense, it seems appropriate for the deliveries to be made by such a professional. Therefore, the sheriff's denial is sustained.

(Emphasis added).

Thus, the trial court gave deference to the sheriff's interpretation of the law. Yet, the statute explicitly calls for de novo review by the trial court, not the Sheriff's department. *See* Minn.Stat. § 724.714, subd. 12.

■ Respondent, in support of the sheriff's position, argues that appellant's business of transporting precious metals does not "require" the carrying of a handgun in the same sense that the job description for a police officer working a beat would require a weapon. It is true that Minn.Stat. § 624.714, subd. 5(c) states, "[h]as an occupation or personal safety hazard requiring a permit to carry," but the law has never been interpreted to mean that unless your job description *requires* you to carry a handgun, that you cannot apply. Put another way, the law has never been interpreted to force an applicant to show that if his application for a permit to carry is denied, he will lose his job.

The supreme court in *Atkinson* has stated that the only exception to [the prohibition against carrying firearms in public] is for persons *who have demonstrated a need or purpose* for carrying firearms and have shown their responsibility to the police in obtaining a permit. *In Re Application of Atkinson*, 291 N.W.2d 396, 399 (Minn.1980) (quoting *State v. Paige*, 256 N.W.2d 298, 303 (Minn.1977)). The key requirements are a demonstrated need and a showing of responsibility by the applicant. This interpretation of the gun permit statute allows applicants, like appellant, to apply for a permit by demonstrating a need or a purpose and by showing responsibility. As stated, nowhere is "a demonstrated need" interpreted as meaning that you have to have the permit or you cannot work. Under the gun permit statute currently in effect, and in effect when *Atkinson* and *Paige* were the law in Minnesota, appellant successfully applied for, received, and renewed his permit to carry a handgun for several consecutive years.

We agree that the application process is more straight forward when the applicant works as a security guard or a private armored car driver. But that cannot mean that appellant and other similarly situated are forbidden to receive a gun permit. The law is not interpreted that narrowly. Applicants who demonstrate a need or purpose, and show responsibility, have fulfilled the requirements.

■ In affirming the denial of appellant's application, the trial court pointed to the fact that appellant can insure his precious metals. The court also suggested that appellant could hire a professional carrier to transport his goods. Neither of these points is relevant to appellant's application. Armored car drivers and others who would easily qualify for a gun permit also carry insurance, and likely more of it than appellant would. Thus, the possibility of purchasing insurance cannot be part of the denial process, nor can the possibility that appellant could hire someone else to transport his precious metals. If you had two armored car services in one town, it would not be a reason to deny gun permits to those who rode in armored car business "A" on the theory that gun permits had already been issued to armored car service "B," and therefore business "A" should close up and farm their customers out to "B." If appellant is entitled to a gun permit, the possibility that he could turn his business over to someone else is not a relevant factor in denying an otherwise qualified application.

Appellant satisfied the requirements of the gun permit statute for ten years in a row. At the time of the application at issue, neither the nature of his business nor the law had changed. We conclude the denial was arbitrary and legally erroneous because the sheriff's department specifically relied upon future standards yet to be adopted to evaluate appellant's 1993 renewal application.

■ In pointing to his original successful application for a handgun permit and his nine consecutive successful renewals, appellant implies that he somehow has acquired a vested right based on past performance. We disagree. Although his possession of a permit without incident for ten straight years is certainly positive evidence to produce for the following year, it is still only evidence. The sheriff has the authority to treat each successive year on an individual basis. Our decision to reverse and remand is based on the sheriff's erroneous assumption that he could incorporate undefined standards yet to be written, into his decision to deny appellant's application.

## DECISION

The decision of the trial court to deny appellant's application is reversed and the matter is remanded for a new hearing. The trial court shall consider appellant's application de novo. The sheriff's personal opinion about standards yet to be adopted is not the standard. The standards to be applied in evaluating appellant's application are those existing as of the time of the application, July 1993.

**Reversed and remanded.**