STATE of Minnesota, Respondent,

v.

Robert Junior BANKS, Appellant.

Nos. C5–82–1214, C7–82–1215.

Supreme Court of Minnesota.

April 1, 1983.

492

Lawrence Laine, Neighborhood Justice Center, Inc., St. Paul, for appellant.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Tom Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

KELLEY, Justice.

This is a sentencing appeal. At issue is the computation of the defendant's criminal history score. This in turn involves determining whether two offenses, for which defendant was sentenced using the so-called *Hernandez* method of computing the criminal history score,[1] were committed as part of a single behavioral incident or course of conduct. A related issue is whether the prosecutor breached a promise not to make any recommendation as to the sentence defendant should receive or as to the computation of defendant's criminal history score and, if so, what relief would be justified on that ground.

Defendant is 26 years old. His prior felony record consists of burglary convictions in 1973 and 1976. He also had three prior misdemeanor convictions for which a sentence was stayed or imposed.

On December 21, 1981, defendant was charged in a three count complaint with having committed three offenses on December 20, 1981: I., unlawful possession of a pistol by a felon, II., possession of a pistol without a permit, and III., fleeing a police officer in a motor vehicle.

On January 21, 1982, defendant was charged in a four count complaint with having committed four offenses on October 13, 1981: I., aggravated forgery, II., uttering a forged instrument, III., aggravated forgery, IV., uttering a forged instrument.

On April 12, 1982, defendant entered guilty pleas to Count II of the complaint filed on January 21, 1982, and to Counts I and III of the earlier complaint. In other words, he pleaded guilty to one count of uttering a forged instrument on October 13, 1981, and counts of being a felon in possession of a pistol and fleeing a police officer in a motor vehicle on December 20, 1981. Defendant's attorney stated that the parties had agreed that all three counts would be sentenced concurrently and that the prosecutor would make no recommendation as to sentence and no recommendation concerning the aggregation of criminal history points under the so-called *Hernandez* method and no objection to defendant receiving credit for time served. The prosecutor stated that this was his understanding of the agreement.

The matter came on for sentencing on May 24, 1982, following the completion of the presentence investigation report, which recommended that the *Hernandez* method be used, with defendant being sentenced first for the uttering, then for the fleeing, then for the possessory offense. Defense counsel argued that the possessory offense and the offense of fleeing the police officer were committed as part of a single behavioral incident and that therefore defendant could be sentenced only for one of them. The prosecutor argued that the incidents were separate. Defense counsel reminded the prosecutor of the terms of the agreement, but the prosecutor claimed that there was nothing in the agreement barring him from speaking to this issue. The court at first sided with the prosecutor, saying that the prosecutor had a right to say what he had said. Defense counsel then had the court reporter read back the terms of the agreement as read into the record on April 12. The court then apparently agreed with defense counsel's interpretation of the agreement. However, the prosecutor later argued that the offenses were not part of a single behavioral incident.

The trial court sentenced defendant as recommended by the person who prepared the presentence investigation report. That is, the court sentenced defendant to 14 months stayed for the uttering (severity level II, criminal history score of two), 1

1. *See State v. Hernandez,* 311 N.W.2d 478 (Minn.1981).

year in the workhouse for the gross misdemeanor offense of fleeing the police, and 22 months in prison for possession of the pistol (severity level III, criminal score of four). The criminal history score of four was based on three felony points (the two priors and the uttering) and one gross misdemeanor/misdemeanor point (based on three prior misdemeanor points and two gross misdemeanor points for the fleeing). The trial court made the sentences concurrent. The court executed the sentence for the possessory offense because he believed that defendant was not amenable to probation. The court stated that even if the two offenses committed on December 20, 1981, were not part of the same behavioral incident it still felt that the 22-month sentence was valid because there were aggravating circumstances present, "namely, that the defendant not only unlawfully possessed a pistol but that he actually drew that pistol from his holster during the course of a scuffle with a St. Paul Police Officer." Defense counsel contested this characterization.

Defense counsel concedes on appeal that the defendant was not amenable to probation and that therefore the refusal to stay the sentence was proper. However, he argues, as he did in the trial court, that the offense of fleeing the police officer was committed as part of the same behavioral incident as the possessory offense and that therefore the sentence for the possessory offense should have been 19 months, not 22. The effect of reducing defendant's sentence to 19 months would be that he would get out of prison 2 months earlier, assuming good time.

1. If the two offenses committed on December 20, 1981, were part of a single behavioral incident, then under Minn.Stat. § 609.035 (1982), the defendant should have been sentenced only for one of them and he would be entitled to have the gross misdemeanor sentence vacated and the sentence for the possessory offense reduced to 19 months.

Minn.Stat. § 609.035 (1982) provides, in relevant part:

> [I]f a person's conduct constitutes more than one offense under the laws of this state he may be punished for only one of such offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them.

In deciding whether nonintentional crimes or a mixture of nonintentional and intentional crimes were part of the same course of conduct, one must analyze the facts and determine whether the offenses "[arose] out of a continuing and uninterrupted course of conduct, manifesting an indivisible state of mind or coincident errors of judgment." *State v. Sailor,* 257 N.W.2d 349, 352 (Minn.1977); *State v. Johnson,* 273 Minn. 394, 405, 141 N.W.2d 517, 525 (1966). In deciding whether two or more intentional crimes were part of the same course of conduct, one must focus on the factors of time and place and also consider whether the segments of conduct involved were motivated by an effort to obtain a single criminal objective. *State v. Johnson,* 273 Minn. at 404, 141 N.W.2d at 525.

This is not a mechanical test but one which involves an examination of all the facts and circumstances of the case. We explained this as follows in *State v. Zuehlke,* 320 N.W.2d 79, 82 (Minn.1982):

> That there is a factual nature to the determination by the trial court—something which we explicitly recognized in *State v. Kemp,* 305 N.W.2d 322, 326 (Minn.1981)—is illustrated by considering the case of *State v. Finn,* 295 Minn. 520, 203 N.W.2d 114 (1972), where we held that the offense of driving recklessly was part of the same behavioral incident as the offense of using a vehicle without authorization where both violations occurred during a continuous and uninterrupted course of driving and the defendant drove recklessly in order to avoid police apprehension on the other charge. If the facts had been a little different and Finn's reckless driving had not been for the purpose of avoiding apprehension on the charge of unauthorized use, the result might have been different.

Defendant contends that his decision to flee the officer was motivated by the fact that he had a gun in his possession. He relies on the so-called avoidance-of-apprehension cases, which include, in addition to the *Finn* case, *State v. Gilbertson,* 323 N.W.2d 810 (Minn.1982) and *State v. Boley,* 299 N.W.2d 924 (Minn.1980).

The police reports indicate that defendant was in his car and began to flee when he saw the police behind him. The chase then ensued with defendant eventually leaving the car and trying to run but slipping. The police officer saw defendant pull his gun out of his holster. The officer stated in his report that it was his belief that defendant was going to point the gun at him. However, when he was arrested defendant said that he was trying to get the gun out and throw it away. When he pleaded guilty, defendant testified to the latter also. In talking with the agent who prepared the presentence investigation report, defendant stated that he saw the officer, then accelerated to evade him. Defendant testified that he fled because he had a gun in his possession which he wanted to toss out and because he did not have a driver's license. He again denied intending to point the gun at the officer.

While we acknowledge that this is a close case, we conclude that the trial court did not err in determining that the two offenses were not committed as part of a single behavioral incident. The possessory offense was a continuing offense. That is, defendant possessed the gun before he entered the car and before he commenced fleeing from the officer. Thus, the offense can be explained without necessary reference to the offense of fleeing the officer. While defendant indicated that he fled the officer because he had a gun in his possession, he also stated that he fled the officer because he did not have a driver's license. Defendant may also have concluded that the police wanted to arrest him for the forgery offenses committed on October 13, 1981. Thus, the offense of fleeing the officer can be explained without necessary reference to the offense of possessing the gun.

That is, defendant apparently would have fled the officer even if had not possessed the gun.

Because of our decision, we need not and do not address the issue of whether there were aggravating circumstances present in this case which would justify increasing defendant's sentence by 3 months if the increase were deemed to constitute a departure.

2. Defendant's alternative contention is that the prosecutor breached the promise not to make a recommendation as to the sentence defendant should receive or as to the computation of defendant's criminal history score. The trial court at first felt that the prosecutor's statements were not barred by the agreement but then, after the agreement was read back by the court reporter, apparently agreed with defense counsel's interpretation of the agreement. Thus, the prosecutor's statements technically may have been in violation of the agreement. However, the appropriate remedy for such a breach would be resentencing. Since it is clear that the trial court's sentencing decision was not affected by the prosecutor's statements, a remand for resentencing would be pointless.

Affirmed.

WAHL, Justice (dissenting in part).

The offense of fleeing the police officer was committed as part of the same behavioral incident as the offense of possessing a gun. The defendant fled *while* possessing the gun. The sentence for possessing the gun should have been 19 months rather than 22 months.

COYNE, Justice (dissenting in part).

I join in the dissent of Justice Wahl.