LARKIN, Judge
Appellant challenges his convictions of threatening violence and possessing a pistol without a permit, arguing that the evidence at trial was insufficient to sustain the possession conviction and that the district court erroneously denied his objection to the state's peremptory challenge of an African American venire member during jury selection. Appellant also argues that the district court erroneously sentenced him for both offenses, because they occurred during the same behavioral incident. We affirm.
FACTS
Respondent State of Minnesota charged appellant DaQuairus Nathaniel Black with second-degree assault under Minn. Stat. § 609.222, subd. 1 (2016), threatening violence under Minn. Stat. § 609.713, subd. 1 (2016), and possessing a pistol without a permit under *707 Minn. Stat. § 624.714, subd. 1a. The complaint alleged that on the morning of August 31, 2016, Black drove up to P.S., his sister's boyfriend, in the area of 4150 Vincent Avenue North in Minneapolis, got out of his car, and told P.S. that he was going to shoot him. The complaint further alleged that when Black made the threat, he pointed a black handgun wrapped in a green cloth at P.S. and that after making the threat, Black tucked the gun into his shorts, returned to his car, and drove away. P.S. reported the incident to the police and described Black's vehicle. Police officers made contact with Black after seeing him get out of a car that matched P.S.'s description. Officers found a black 9 mm semiautomatic pistol inside a green cloth bag in the trunk of the car. Black told the officers that he did not have a permit to carry a gun.
The charges against Black were tried to a jury. During voir dire, the district court denied Black's objection to the state's peremptory challenge to an African American venire member. The jury found Black guilty of threatening violence and possessing a pistol without a permit, but it found him not guilty of second-degree assault. The district court entered judgments of conviction on the threatening violence and possession offenses and sentenced Black for both offenses. Black appeals from the judgments of conviction and sentences.
ISSUES
I. Was the evidence sufficient to sustain Black's conviction of possessing a pistol without a permit?
II. Did the district court err by denying Black's objection to the state's peremptory challenge to an African American venire member?
III. Did the district court err by sentencing Black for both threatening violence and possessing a pistol without a permit?
ANALYSIS
I.
Black challenges the sufficiency of the evidence to sustain his conviction of possessing a pistol without a permit. Black was convicted under Minn. Stat. § 624.714, subd. 1a, which provides,
A person, other than a peace officer, as defined in section 626.84, subdivision 1, who carries, holds, or possesses a pistol in a motor vehicle, snowmobile, or boat, or on or about the person's clothes or the person, or otherwise in possession or control in a public place, as defined in section 624.7181, subdivision 1, paragraph (c), without first having obtained a permit to carry the pistol is guilty of a gross misdemeanor.
(Emphasis added.)
Black contends that a defendant's peace-officer status is an element of the offense and argues that "[t]he State failed, as a matter of law, to prove beyond a reasonable doubt that [he] was guilty of possessing a pistol without a permit," because the state did not prove that he was not a peace officer. The state counters that it "did not have to prove Black was not a peace officer" because the "other than a peace officer" language in 624.714, subd. 1a, creates an exception to criminal liability, and not an element of the offense that the state must prove beyond a reasonable doubt.
If a sufficiency-of-the-evidence claim turns on the meaning of the statute under which a defendant has been convicted, an appellate court is presented with a question of statutory interpretation, which it reviews de novo. State v. Henderson , 907 N.W.2d 623, 625 (Minn. 2018). "If a statute is unambiguous, we apply its plain meaning." Id .
"The test for determining what constitutes a basic element of[,] rather *708 than an exception to[,] a statute ... [is] whether the exception is so incorporated with the clause defining the offense that it becomes in fact a part of the description." State v. Brechon , 352 N.W.2d 745, 749 (Minn. 1984) (quotation omitted). To place the burden of proving an exception on the defendant, "a court must decide that the act in itself, without the exception, is ordinarily dangerous to society or involves moral turpitude and that requiring the state to prove the acts would place an impossible burden on the prosecution." Id. (quotation omitted).
The state relies on State v. Timberlake , 744 N.W.2d 390 (Minn. 2008), and State v. Williams , 794 N.W.2d 867 (Minn. 2011), as support for its position that the peace-officer language creates an exception and not an element. In Timberlake , police officers stopped a vehicle based on a 911 report that one of the vehicle's occupants had dropped a gun when he got out of the vehicle at a gas station. 744 N.W.2d at 392. After the police stopped the vehicle, they found a semiautomatic handgun under the front passenger seat. Id. The defendant was subsequently charged with prohibited possession of a firearm and moved to suppress the gun, arguing that there was an insufficient basis for the vehicle stop. Id. at 392 & n.2. The district court denied the defendant's motion to suppress. Id. at 392.
On appeal, the defendant argued that "because it is legal in Minnesota for a private citizen to carry a permitted gun in public, police may not conduct an investigatory stop without additional evidence that the possession itself is illegal." Id. at 394. The supreme court rejected that argument, noting that in State v. Paige , 256 N.W.2d 298 (Minn. 1977), it had determined that "the 'without a permit' language" in Minn. Stat. § 624.714, subd. 1a,[1] "does not add another element to the crime of carrying a pistol in a public place" but rather "creates an exception to criminal liability that places a burden on the defendant to come forward with some evidence of a permit." Timberlake , 744 N.W.2d at 394-95.
In Paige , the supreme court explained its interpretation of the "without a permit" language as follows:
The better view is that "without a permit" is an exception. First, the defendant has the immediate opportunity to present his permit, if he has one, and thus avoid prosecution under the statute. There is nothing inherently unfair in requiring persons charged under the statute to present their permits. Second, the statute is intended to prevent the possession of firearms in places where they are most likely to cause harm in the wrong hands, i.e., in public places where their discharge may injure or kill intended or unintended victims. The only exception to this rule is for persons who have demonstrated a need or purpose for carrying firearms and have shown their responsibility to the police in obtaining a permit. The statute is therefore properly characterized as a "general prohibition": Anyone having a firearm in a public place may be prosecuted if he has no permit. "Without a permit" is not an element of the crime, but only indicates that some persons cannot commit the offense by reason of having a valid permit.
*709 256 N.W.2d at 303 (partial emphasis added). In Timberlake , the supreme court reaffirmed its interpretation of the permit language in Paige . 744 N.W.2d at 397.
In Williams , an officer arrested the defendant based on his possession of a pistol. 794 N.W.2d at 869. The defendant moved to suppress the pistol, arguing that his arrest was unlawful. Id. at 869-70. The district court denied the defendant's motion to suppress. Id. at 870. On appeal, the defendant argued that an officer must "determine proactively that a person does not have a permit before arresting that person for possession of a firearm in a public place." Id. at 871. The supreme court rejected that argument, again noting that under Paige , "the 'without first having obtained a permit' language" of Minn. Stat. § 624.714, subd. 1a, "did not add an element to the crime of possession of a pistol in a public place" and instead "created an exception to criminal liability." Id. at 872. The supreme court explained that "[u]nder [its] construction of the statute, the elements of the offense are satisfied when the State proves at trial that a person possessed a pistol in a public place." Id.
Black does not acknowledge Paige , Timberlake , or Williams , or address their application here. But for the reasons that follow, we conclude that the supreme court's reasons for treating the permit language in Minn. Stat. § 624.714, subd. 1a, as creating an exception, and not an element, apply with equal force to the peace-officer language.
First, as the supreme court noted in Paige , Minn. Stat. § 624.714, subd. 1a, is properly characterized as a "general prohibition," because it "is intended to prevent the possession of firearms in places where they are most likely to cause harm in the wrong hands, i.e., in public places where their discharge may injure or kill intended or unintended victims." 256 N.W.2d at 303. The supreme court further noted that the statute sets forth an exception for valid permit holders. Id . The statute also excludes "a peace officer, as defined in section 626.84, subdivision 1," from its application. Minn. Stat. § 624.714, subd. 1a. We do not discern a reason to treat the peace-officer exclusion differently than the permit-holder exception. Like the permit-holder language, the peace-officer language does not create an element of the crime; instead, it indicates that some persons cannot commit the offense by reason of their status as a peace officer. See Paige , 256 N.W.2d at 303 (" 'Without a permit' is not an element of the crime, but only indicates that some persons cannot commit the offense by reason of having a valid permit.").
Second, like a valid permit holder, a peace officer has the immediate opportunity to present proof of his peace-officer status and avoid prosecution under the statute. There is "nothing inherently unfair" in requiring persons charged under the statute to present proof that they are peace officers. See id. ("There is nothing inherently unfair in requiring persons charged under the [pistol-possession] statute to present their permits."). "Once the defendant has come forward initially with evidence of the permit, the state's difficulty in 'proving a negative' is alleviated, making it reasonable for the state to disprove the defense." Id. at 304.
In sum, treating the peace-officer language in Minn. Stat. § 624.714, subd. 1a, as creating an exception, and not an element, is consistent with Paige , Williams , and Timberlake . We therefore hold that the peace-officer language creates an exception to criminal liability, and not an element of the offense. Thus, the state did not need to prove that Black was not a peace officer, and Black's sufficiency challenge fails as a matter of law.
*710 II.
Black contends that the district court erred by denying his objection to the state's peremptory challenge to an African American venire member during jury selection. The Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution "forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." Batson v. Kentucky , 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). "If ... the facts establish, prima facie, purposeful discrimination and the prosecutor does not come forward with a neutral explanation for [her] action, [Supreme Court] precedents require that [the resulting] conviction be reversed." Id. at 100, 106 S.Ct. at 1725.
The Supreme Court has established a three-step process to determine whether a peremptory challenge was racially motivated. Id. at 96-98, 106 S.Ct. at 1723-24 ; see also Minn. R. Crim. P. 26.02, subd. 7(3) (adopting the Batson three-step process). First, the objecting party must establish a prima-facie case of purposeful discrimination. Batson , 476 U.S. at 96, 106 S.Ct. at 1723. Second, if the objecting party establishes a prima-facie case, then the proponent of the peremptory challenge must provide a race-neutral explanation. Id. at 97, 106 S.Ct. at 1723. Third, the district court must determine whether the objecting party has established purposeful discrimination. Id. at 98, 106 S.Ct. at 1724. It is important for the district court to clearly demarcate and "announce on the record its analysis of each of the three steps of the Batson analysis." State v. Reiners , 664 N.W.2d 826, 832 (Minn. 2003).
An appellate court gives "great deference to a district court's ruling on a Batson challenge and will not reverse the ruling unless it is clearly erroneous." State v. Wilson , 900 N.W.2d 373, 378 (Minn. 2017) (quotation omitted). "We grant such deference because the existence of racial discrimination in the exercise of a peremptory strike is a factual determination, and the record may not reflect all of the relevant circumstances that the court may consider." Id . (quotation omitted). But if the district court erred in applying the three-step Batson analysis, an appellate court examines the record without deferring to the district court's analysis. State v. Pendleton , 725 N.W.2d 717, 726 (Minn. 2007).
Black argues that the district court erred by ruling that he did not establish a prima-facie case and that "the case must be remanded for a hearing to determine whether the motive for the strike was purposeful racial discrimination."
During voir dire, Black objected to the state's peremptory challenge to Venire Member S, who was African American. Black's counsel noted that because the state had already removed one African American venire member for cause, there were only two African American venire members left on the panel. Black argued that removing Venire Member S from the panel "does show and raise the prima facie case" required under Batson 's first step. The district court found that Black failed to establish a prima-facie case of purposeful discrimination. The district court stated that "what I am hearing is essentially a race-neutral/gender neutral explanation" and that a peremptory strike is permitted "unless there is-it involves a prohibited purpose, and I am not seeing a prohibited purpose here, so we aren't going to go any further with that."
After the district court announced its ruling, the prosecutor explained that
had the Court found that the defense had established a prima facie case of *711 purposeful discrimination, which I understand the Court has not, but had the Court found that, I would have articulated what I did at the bench as to a race-neutral reason for why the state did strike [Venire Member S], and that was with regard to defense's questioning as to-and her response to that, that she has five siblings, that she is the second oldest. It's anticipated, at least from my perspective in following some of the questioning that the defense was requesting is that ... they will attempt to argue that Mr. Black, in his actions in this case against the victim, was confronting the victim as a result of something-some prior situation between the victim and the defendant's sister.
And so I believe that they will make arguments relating to the sibling issue and protectiveness of the sibling issue, and so that is the reason why the state removed [Venire Member S].
The district court's statement regarding the race-neutral reason for the peremptory strike of Venire Member S, which relates to the second step of a Batson analysis, could suggest that the district court erred in its Batson analysis by failing to decide the prima-facie issue before advancing to the second step of its Batson analysis. See Reiners , 664 N.W.2d at 832 (instructing district courts to follow the three-step Batson analysis precisely and to explain its reasoning at each step, without combining the steps). However, Black's challenge to the district court's ruling appears to focus on the district court's determination that Black did not establish a prima-facie case, and not on whether the district court strictly complied with the procedural aspects of a proper Batson analysis. We therefore focus our review on the district court's prima-facie determination, while reminding the district court of the need to be careful not to conflate the three separate components of a proper Batson analysis. See id . (stating that a district court must clarify its ruling at each step).
The defendant's burden to establish a prima-facie case is low; a defendant need only "produc[e] evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." Johnson v. California , 545 U.S. 162, 170, 125 S.Ct. 2410, 2417, 162 L.Ed.2d 129 (2005). A prima-facie case of purposeful discrimination is established "by showing: (1) that one or more members of a racial minority has been peremptorily excluded and (2) that circumstances of the case raise an inference that the exclusion was based on race." State v. Onyelobi , 879 N.W.2d 334, 345 (Minn. 2016) (quotation omitted). However, "[t]he fact that the prospective juror is a member of a racial minority, alone, does not raise an inference that the exclusion was based on race." State v. Wren , 738 N.W.2d 378, 388 (Minn. 2007). Instead, a prima-facie showing is based on the "totality of the relevant facts" regarding the proponent's conduct during the trial. Miller-El v. Dretke , 545 U.S. 231, 239, 125 S.Ct. 2317, 2324, 162 L.Ed.2d 196 (2005) (quotation omitted).
Black argues that he made a prima-facie case under Batson because Venire Member S had been asked "similar questions to ... other jurors about whether they had siblings and [at] least one of these jurors-[Venire Member R, who was white] ...- was not removed by the State." Black argues that "[t]his difference in approach-striking an African-American juror [ (S) ] while not striking a white juror [ (R) ]-is enough to satisfy Batson 's first step." However, the state did not remove another African American, Venire Member Z, who answered similar questions about siblings and had a sibling. These circumstances do not establish a prima-facie case of racial discrimination. See *712 Wilson , 900 N.W.2d at 382 ("[B]ecause the State accepted one black juror, we conclude that Wilson cannot demonstrate that he has met the required [prima-facie] standard."); State v. Everett , 472 N.W.2d 864, 869 (Minn. 1991) (considering it "significant that the jury ultimately included a member of a minority"). And Black does not point to any other circumstances that would raise an inference that the state's exclusion of Venire Member S was based on race.
On this record, we cannot say that the district court clearly erred in finding that Black failed to establish a prima-facie case of purposeful discrimination. The district court therefore did not err by denying Black's objection to the state's peremptory challenge to Venire Member S.
III.
Black contends that the district court erred by sentencing him for both of his convictions because the offenses of threatening violence and possessing a pistol without a permit "occurred during the same behavioral incident." Although Black did not raise this issue at sentencing in the district court, it is properly before this court because "an appellant does not waive claims of multiple convictions or sentences by failing to raise the issue at the time of sentencing." Spann v. State , 740 N.W.2d 570, 573 (Minn. 2007).
Under Minn. Stat. § 609.035, subd. 1 (2016), "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them." " Section 609.035 prohibits multiple sentences, even concurrent sentences, for two or more offenses that were committed as part of a single behavioral incident." State v. Norregaard , 384 N.W.2d 449, 449 (Minn. 1986). The test for determining whether the two offenses in this case arose from a single behavioral incident is "whether the offenses occur[red] at substantially the same time and place and arose out of a continuous and uninterrupted course of conduct, manifesting an indivisible state of mind or coincident errors of judgment." State v. Bauer , 792 N.W.2d 825, 828 n.3 (Minn. 2011) (quotation omitted). "Whether the offenses were part of a single behavioral incident is a mixed question of law and fact." State v. Bakken , 883 N.W.2d 264, 270 (Minn. 2016).
Black argues that "the two offenses here took place at the same time-the early morning of August 31, 2016-and the record shows that they occurred in the same place-within a small area of a neighborhood in north Minneapolis." Black emphasizes that the "State's theory on the [threats of violence] count was that [he] threatened to shoot [P.S.] while holding the pistol." He argues that "the pistol possessed by [him] and the threatened behavior against [P.S.] share the commonality of the firearm and possessing the firearm was a means to commit the threats."
The jury's verdict undercuts Black's argument. The jury found Black not guilty of second-degree assault under Minn. Stat. § 609.222, subd. 1, which required proof that Black assaulted P.S. "with a dangerous weapon." In doing so, the jury appears to have rejected the state's theory that Black threatened to shoot P.S. while holding the pistol. We therefore reject Black's reliance on the state's trial theory, and we view the record as establishing that Black committed the offense of threatening violence without using the pistol.
Our decision whether Black's convictions were based on offenses that occurred during a single behavioral incident is influenced by *713 State v. Banks, 331 N.W.2d 491 (Minn. 1983). In Banks , the defendant was in a car and began to flee when he saw police behind him. Id. at 494. Banks eventually left his car and ran from the police on foot. Id . An officer observed Banks pull a gun out of a holster during the chase. Id. The supreme court concluded that the district court did not err in determining that Banks's flight from police and possession of the gun were not committed as part of a single behavioral incident. Id. The supreme court reasoned that because the possession of the gun was a "continuing offense," that is, the defendant "possessed the gun before he entered the car and before he commenced fleeing from the officer," it could be "explained without necessary reference to the offense of fleeing the officer." Id.
Similarly, Black's possession of a pistol without a permit was a continuing offense that can be explained without reference to his threat of violence. Black did not need to possess or display a pistol to threaten to shoot P.S. And the police discovered Black in possession of the pistol after he had threatened P.S. We therefore determine that the offenses of threatening violence and possessing a pistol without a permit were not committed as part of a single behavioral incident and that the district court did not err by sentencing Black for both offenses.
DECISION
Because a defendant's peace-officer status is not an element of the offense of possessing a pistol without a permit under Minn. Stat. § 624.714, subd. 1a, Black's challenge to the sufficiency of the evidence to sustain his conviction fails as a matter of law. In addition, because Black did not establish a prima-facie case of purposeful discrimination, the district court did not err by denying his objection to the state's peremptory challenge of an African American venire member. Lastly, because Black did not commit the offenses of threatening violence and possessing a pistol without a permit during a single behavioral incident, the district court did not err by sentencing Black for both offenses.
Affirmed.

In 2003, the legislature recodified the language describing the offense of possession of a pistol without a permit in Minn. Stat. § 624.714 from subdivision 1 to subdivision 1a. 2003 Minn. Laws ch. 28, art. 2, §§ 4-5, at 265, 274, 290. Because the 2003 amendment did not overrule Paige or substantively alter the offense, Timberlake , 744 N.W.2d at 395-96, we refer to the relevant statutory provision as Minn. Stat. § 624.714, subd. 1a, throughout this opinion.